

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-15-269

| | |
|---|---|
| TERESA WHITTIKER<br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES<br>APPELLEE | **Opinion Delivered** September 9, 2015<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>EIGHTH DIVISION<br>[NO. 60JV2013-1754]<br><br>HONORABLE WILEY A. BRANTON,<br>JR., JUDGE<br><br>AFFIRMED |

**CLIFF HOOFMAN, Judge**

Appellant Teresa Whittiker appeals from the order of the Pulaski County Circuit Court terminating her parental rights to her two daughters, C.W. and N.W. On appeal, Whittiker argues that termination was not in the children's best interest because there was no evidence that they would be subjected to potential harm if returned to her custody. We affirm.

On October 28, 2013, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody of then eight-year-old C.W. and six-year-old N.W., after a report was made to the child-abuse hotline on October 22, 2013, stating that the children were running up and down the street unattended while the children's mother was "strung out on dope." According to the affidavit attached to the petition, DHS made contact with the family and observed that three families were living in the home, which was filthy and had clothing and spoiled food scattered around on the floor. Also, a portion of the home's ceiling

and a wall were falling apart, and there was very little food in the refrigerator and cabinets. Whittiker admitted that she had been using methamphetamine, and this was confirmed by her positive drug screen. It was further discovered that C.W. and N.W. were not in school, although Whittiker claimed that she had been home schooling them. An order for emergency custody was entered by the circuit court on October 28, 2013, and a probable-cause order was entered on November 4, 2013.

The adjudication hearing was held on December 17, 2013, and the circuit court found that the children were dependent-neglected based on the allegations in the emergency petition. The court further found clear and convincing evidence to support a finding of aggravated circumstances based on (1) environmental neglect, educational neglect, and dental neglect, all of which constituted extreme general neglect on Whittiker's part; and (2) abuse, due to N.W. testing positive for methamphetamine on a hair follicle test. The court found that Whittiker lacked credibility in her testimony and stated that it was concerned about her prior history with DHS. In a 2008 environmental-neglect case and a 2011 educational-neglect case, Whittiker had received services and had been cooperative with DHS, resulting in the cases being closed; however, given that a third case had now been opened, the circuit court found that this history demonstrated that Whittiker was able to make progress while being scrutinized by authority but that she would then regress when that scrutiny ended.

A report from Whittiker's psychological evaluation was also introduced at the adjudication hearing, and Dr. Paul Deyoub diagnosed Whittiker with substance abuse, depression, and dependent-personality disorder. Dr. Deyoub stated that Whittiker required

SLIP OPINION

outpatient treatment, although if she were to fail any subsequent drug screens, residential treatment would be required. He also found that Whittiker needed individual counseling, medication management, a stable job with adequate income, and a place to live by herself that was stable, clean, and adequate.

Based on the evaluation and evidence presented at the hearing, the circuit court stated that Whittiker would need to show a sustained, positive effort to address her deficiencies but that the goal of the case would remain reunification. She was ordered to follow the recommendations of her psychological evaluation, obtain drug rehabilitation, attend individual counseling, submit to random drug and alcohol screening, and establish her own residence.

A review hearing was held in March 2014. The circuit court found that Whittiker had made an effort to comply with the court's orders and that her drug tests had been negative. However, the court stated that the case remained on shaky ground and that Whittiker needed to establish and maintain stable housing and income, as well as maintain progress in other areas. The court also ordered that Whittiker attend Narcotics Anonymous (NA) meetings.

A permanency-planning hearing was held in July 2014. The evidence presented at that hearing showed that Whittiker had relapsed and had tested positive for methamphetamine on May 23, June 6, June 10, June 17, June 24, and June 26. She entered residential drug treatment on June 30, 2014, but was then discharged on July 17 before completing the program, due to her failure to follow the center's rules. The circuit court found that, although Whittiker had complied with some court orders, she had failed to make any material progress. The court made another finding of aggravated circumstances based on the fact that

SLIP OPINION

SLIP OPINION

it was unlikely that additional services to the family would result in successful reunification within a reasonable period of time. The court changed the goal of the case to termination of parental rights and adoption, although it ordered that DHS continue to provide services to Whittiker. The court noted that termination was not a foregone conclusion and that Whittiker needed "to step up and do what is necessary to demonstrate stability and that she has overcome her drug addiction."

A petition to terminate Whittiker's parental rights was filed on October 15, 2014. DHS alleged multiple grounds for termination, including the circuit court's prior findings that Whittiker had subjected the children to aggravated circumstances. DHS further alleged that termination was in the children's best interest based on the potential of serious harm due to the continued risk of drug exposure, instability, and educational, environmental, and dental neglect.

The termination hearing was held on November 18, 2014. Joann Darton, the DHS caseworker, testified as to her history with the family in the two prior cases, which also involved environmental and educational neglect. Darton stated that Whittiker was currently living with her adult daughter in a home that was appropriate for the children and that Whittiker was currently employed at Wal–Mart. Darton further testified that Whittiker had tested negative on all of her drug tests since June 2014, that she had provided proof of her attendance at NA/AA meetings, that visits with the children had gone well, and that she had completed outpatient drug rehabilitation, parenting classes, and counseling. However, Darton noted that Whittiker had been discharged prior to completing her inpatient drug treatment

subsequent to her relapse. Darton testified that she was recommending termination based on her history with Whittiker, as Whittiker had a pattern of not being able to maintain her progress when DHS was no longer monitoring her. Darton also described Whittiker's progress in the current case as "minimal," noting that Whittiker had not been able to maintain steady employment and had only been working at Wal-Mart since September 2014. Darton further testified about her concern with Whittiker's depression and dependent personality, indicating that she had witnessed these tendencies while working with Whittiker. With regard to the court's finding of dental neglect, Darton stated that she had never seen any children who needed such extensive dental work and that she did not find plausible Whittiker's explanation that the problems were merely hereditary. Darton testified that termination of Whittiker's parental rights would be in the children's best interest because the girls were adoptable and in need of a loving, permanent home where their needs would be met without further emotional, medical, and educational neglect.

Whittiker testified that she had been living with her daughter since April 2014 and that both of their names were on the lease. She also stated that she had sufficient income to support her children from her job at Wal-Mart. According to Whittiker, she had benefitted from her counseling and outpatient drug treatment, and she claimed that she relapsed in May 2014 only because she was depressed that she could not see her children for Mother's Day. With regard to her discharge from inpatient drug treatment, Whittiker testified that she did not break any rules but that other patients did and that the whole group was blamed for the infraction. She testified that she had not used drugs since that time and that she had been

attending NA/AA meetings. She denied having a long history of drug abuse, stating that she had only been using methamphetamine "off and on" since the end of 2011. Whittiker stated that she would not relapse again because she did not want to lose her children. She also testified that she would continue to ensure her children received proper dental care if they were returned. With regard to the issue of educational neglect, Whittiker claimed that the 2008 case was caused by a lack of transportation to a new school and that in the current case, her sister had failed to enroll the children in school while Whittiker was in jail in order to pay off old fines.

At the conclusion of the hearing, the circuit court found that the grounds for termination were shown by clear and convincing evidence based on the court's previous findings of aggravated circumstances, based on Whittiker's failure to remedy the conditions causing removal within twelve months, and based on subsequent issues that arose after the children were removed but that prevented their return to the home. The court further found that there was clear and convincing evidence that termination of Whittiker's parental rights was in the best interest of the children based on the likelihood that they would be adopted and the potential harm to the health and safety of the children if they were to be returned to their mother. The termination order was entered on January 7, 2015, and Whittiker has timely appealed from this order.[1]

The rights of natural parents are not to be passed over lightly; however, parental rights

---

[1] The parental rights of the children's father, Anthony Pilkinton, were also terminated in the same order; however, he is not a party to this appeal.

will not be enforced to the detriment or destruction of the health and well-being of the child. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A trial court's order terminating parental rights must be based upon findings proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Dinkins, supra.* On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

Pursuant to Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013), an order terminating parental rights shall be based upon a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent. The order terminating parental rights also must be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B).

Whittiker does not challenge the statutory grounds for termination on appeal but instead argues only that there was insufficient evidence that termination was in the children's

SLIP OPINION

best interest; thus, there is no need to discuss the evidence supporting the trial court's stated grounds for termination. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798. Specifically, Whittiker contends that the circuit court erred in finding that termination was in the children's best interest where there was no evidence to demonstrate that they would be subjected to potential harm if returned to her custody. She does not challenge the circuit court's finding that the children were adoptable.

We have held that the potential-harm inquiry should be conducted in broad terms. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180 (2009); *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Potential harm is only one of the factors the trial court must consider in its best-interest analysis, and the court is not required to find that actual harm would result or to affirmatively identify the potential harm. *Dowdy*, *supra*; *Lee*, *supra*.

In the termination order, the circuit court found that "[b]ased on the whole history, the court cannot rely on the mother's providing the minimum level of care necessary to maintain the safety, health, and welfare of her children if they were to be returned to her custody." While Whittiker asserts that the circuit court engaged in mere speculation by finding that her past history would necessarily dictate the future result in this case, we have previously held that it is appropriate for a trial court to consider a parent's past behavior as a predictor of likely potential harm should the children be returned to the parent's custody. *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, 451 S.W.3d 231; *Dowdy*, *supra*.

The evidence recited by the circuit court in this case to support its decision included

8

Whittiker's two prior cases with DHS for environmental and educational neglect, both of which were also reasons for the children's removal in the present case. However, the court further recited Whittiker's inability to maintain her progress in this case on the issue of her drug addiction, as evidenced by her relapse that occurred just prior to the permanency-planning hearing. Subsequent to her relapse, Whittiker then failed to complete inpatient drug treatment. While Whittiker's drug tests after her relapse were negative, the circuit court was not satisfied that this "11th hour" effort demonstrated that Whittiker had remedied her addiction. Based on the totality of the evidence and Whittiker's history, the court stated that "it had no confidence that current progress is sustainable."

Whittiker contends that this case "boiled down to Ms. Whittiker's drug abuse" and argues that "her relapse, being an isolated event, was not sufficiently pervasive as to warrant a finding that termination was in the girls' best interest." Contrary to Whittiker's assertion, however, the environmental, educational, and dental neglect were still issues that were appropriately considered by the circuit court at the termination hearing as part of its decision. While there was no evidence that Whittiker had failed to comply with court orders regarding these particular issues, the circuit court again noted that she had a history of complying while under DHS scrutiny, then relapsing after the case was closed. In addition, the court found that Whittiker's explanations regarding her children's extensive dental neglect and their failure to attend school were not credible. For example, although Whittiker claimed that when the children were initially removed, they were not in school because she was home schooling them, at the termination hearing, she testified instead that her sister had failed to register the

girls for school as Whittiker had requested. With regard to the girls' severe dental problems, Whittiker claimed that the problems were not caused by neglect but were instead hereditary. The court found that Whittiker lacked credibility and insight and had not remedied the conditions causing removal, including the neglect, which caused concern for the children's health, safety, and welfare if they were to be returned to her custody. It is not the completion of the case plan that is determinative; rather, what is important is whether completing the requirements of the case plan achieved the intended result of making the parent capable of caring for the child. *Dowdy, supra.*

Furthermore, the issue of Whittiker's drug abuse was highly relevant to the circuit court's consideration of potential harm, as this court has previously found that such drug use demonstrates an indifference to remedying the conditions causing removal and that this indifference is contrary to the children's health, safety, and well-being. *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004). Whittiker cites to our decision in *Kight v. Arkansas Department of Human Services*, 87 Ark. App. 230, 189 S.W.3d 498 (2004), as support for her contention that a one-time relapse is insufficient to support a termination of parental rights. In this case, however, Whittiker failed six separate drug tests over a period exceeding one month. In addition, unlike the appellant in *Kight*, she failed to complete inpatient drug treatment after her relapse, as had been recommended by her psychological evaluation. Further, the sole issue causing removal of the child in *Kight* was the mother's drug use; there were no issues of neglect that had affected the child, as there are in the present case. *Id.* at 238, 189 S.W.3d at 502.

Based on the evidence presented in this case, the circuit court did not clearly err by concluding that Whittiker's history, including her lack of progress in the current case with respect to her drug addiction, demonstrated a potential harm to her children if they were to be returned to her custody. Therefore, we affirm the circuit court's finding that termination of Whittiker's parental rights was in the children's best interest.

Affirmed.

ABRAMSON and GRUBER, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha B. McNulty*, Office of Policy & Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.