SLIP OPINION

Cite as 2016 Ark. App. 214

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–15–950

| | |
|---|---|
| MICHAEL MCELWEE<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND M.M.,<br>MINOR CHILD<br><br>APPELLEES | Opinion Delivered April 20, 2016<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT, FORT<br>SMITH DISTRICT<br>[NO. JV2014–357]<br><br>HONORABLE JIM D. SPEARS,<br>JUDGE<br><br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Michael McElwee appeals the Sebastian County Circuit Court order terminating his parental rights to his minor child, M.M. McElwee asserts that the circuit court erred in finding that it was in the best interest of the child to terminate his parental rights. We disagree, and we affirm.

### I. *Facts*

M.M. (born 4/11/2013) was placed in emergency custody of the Arkansas Department of Human Services (the Department) on April 17, 2014, based on reports that Michael had physically abused his wife, Melody Hunt (M.M.'s mother).[1] McElwee was

---

[1] Hunt's parental rights were also terminated, but they are not the subject of this appeal.

named as the putative father in the affidavit. The affidavit for the emergency-custody order also described the parents' drug use and unsuitable conditions in the home such as no furniture, nowhere for M.M. to sleep, and trash and cigarette butts on the floor within M.M.'s reach. The affidavit also sets forth that a family-service worker had found a one-and-a-half-inch by four-inch healing burn on M.M.'s leg. Melody later explained M.M. had been burned by a floor vent and that McElwee had taken M.M. to a hospital in Sallisaw, Oklahoma, which could not be confirmed by the hospital there. The physician who examined M.M. at the time M.M. was placed in the custody of the Department stated that the burn could not have come from a floor vent.

A case plan was entered May 9, 2014. McElwee was ordered to complete parenting, anger-management, and domestic-violence classes; participate in a drug-and-alcohol assessment; and make himself available for drug screening. He was also ordered to find employment, refrain from drug use, procure stable and appropriate housing, and complete a psychological evaluation. A probable-cause order was entered on May 15, 2014. The circuit court found that there was evidence of circumstances such that immediate action was necessary to protect the child by removing him from the home. Specifically, the circuit court found that there was evidence of parental drug use and domestic abuse, and it found that the burn on the child's leg and the mother's unverifiable story about details concerning the burn supported its finding of probable cause. The circuit court ordered McElwee to establish paternity. McElwee did not appear at the hearing, and he did not have an attorney at that time.

SLIP OPINION

On May 27, 2014, M.M. was declared dependent-neglected after a hearing on the matter at which McElwee appeared pro se. An adjudication order was entered the same day, and in it, McElwee was again ordered to establish paternity; find legal employment; complete the classes listed in the case plan; submit to psychological and drug-and-alcohol assessments and complete any treatment recommended; and he was ordered to resolve any pending criminal matters. The circuit court denied McElwee's request to waive DNA testing.

On October 20, 2014, the circuit court held a review hearing at which McElwee appeared pro se. The review order was entered on December 17, 2014. In its order, the circuit court found that DNA testing showed McElwee to be M.M.'s father and that returning M.M. to his parents' care was contrary to M.M.'s health, safety, and welfare. The circuit court also found that McElwee had not complied with the case plan. Specifically, the circuit court found that McElwee had been incarcerated in the Sebastian County jail, that he had not completed any services, and that he had not exercised visitation with his child. Though the goal of the case was still reunification, the court found that a concurrent goal of adoption was appropriate. At the time of the review hearing, M.M. had been placed with his paternal aunt. A termination hearing was scheduled for January 12, 2015.

On November 3, 2014, the court appointed an attorney to represent McElwee. In its termination petition, the Department alleged several statutory grounds for termination, that McElwee's sister was interested in adopting M.M., that there was potential for harm to M.M. if he was returned to the custody of his parents, and that termination was in M.M.'s best interest.



The termination hearing took place on March 16, 2015. McElwee appeared with his attorney. At the hearing, McElwee testified that he was currently incarcerated at the Varner Unit for delivery of methamphetamine and that his sentence was ten years with ten years' suspended, but that he might be released by the end of the year. He testified that one of his children born prior to M.M. had been adopted. McElwee testified that M.M. had been removed because Melody had made false statements about the domestic abuse and that he had not hit her as she had stated to family-service workers. He testified that when M.M. was burned he called his sister, who was employed as a nurse and that she bandaged the wound and told him how to care for it. McElwee testified that, for that reason, he never took M.M. to a doctor. McElwee testified that he received the case plan only after he had contacted the supervisor for the caseworker assigned to their case and that after he picked up the case plan in May 2014, he began to comply with the order. McElwee testified that there were services available at the Varner Unit and that he was waiting for a spot to open. He stated that he had changed a lot since the removal of his first child, and he asked the court for more time to comply with the case plan. McElwee pointed to his efforts before this case had begun: that he took M.M. to his medical and WIC appointments and that he had been working (out of desperation he had begun selling drugs) and providing for his son. McElwee explained that he had become a Christian, that he loved his son, and that he now understood that his actions affected M.M. McElwee testified that he had completed anger-management classes in prison and that he had been going to NA meetings; however, he did not submit certificates for completion of the program or sign-in sheets for the meetings.

Department caseworker Cheryl Deaton testified that McElwee contacted her and asked her for the case plan, and that she left a copy for him at the front desk on or around May 17. She testified that she had walked McElwee through the requirements, explained to him how referrals for services were made, and was "confident that Mr. McElwee was aware of what he needed to do." Deaton testified that the referrals were made by the Department as ordered; however, she explained that McElwee was rearrested shortly after their meeting, and she was not sure if the referrals got to him. Deaton testified that she was involved in the prior termination of McElwee's parental rights in 2013 and that it was her opinion that McElwee had not made any progress since that time. Deaton stated that "all the issues that were there before are still there" and that "we've had a long-standing history and it's been continual and a pattern." She testified that she did not believe that McElwee would benefit from more services or time and that M.M. would be at risk if he were returned to the parents because there was no guarantee that McElwee would stay sober, be able to provide a home, or "even meet the child's needs."

In its written order entered on August 18, 2015, the circuit court found the following grounds for termination: (1) subsequent factors, namely, McElwee's incarceration; (2) prior termination of McElwee's parental rights involving previous children; (3) McElwee had been sentenced in a criminal proceeding for a period of time that would amount to a substantial period of the child's life; (4) aggravated circumstances, specifically, abandonment, and that McElwee's parental rights were terminated as to a sibling of M.M.'s; and that the root cause of these aggravated circumstances was that McElwee has been unable to resolve his drug

SLIP OPINION

addiction; and (5) the best interest of the child would be served by termination, considering the likelihood of adoption and the potential harm to M.M.'s welfare and safety if he was returned to his parents due to their drug abuse, mental-health issues, and inability to conform their behavior to the law. McElwee filed a timely notice of appeal.

## II. *Point on Appeal*

For his sole point on appeal, McElwee argues that the evidence was insufficient to support the circuit court's finding that termination was in M.M.'s best interest in light of M.M.'s placement with a relative. McElwee does not challenge the statutory grounds upon which his rights were terminated. Nor does he challenge the circuit court's finding that M.M. is adoptable.

## A. Standard of Review and Applicable Law

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Madison v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 368, at 6, 428 S.W.3d 555, 559 (citing Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2011)). Furthermore, our appellate courts have noted that, in considering the best interest of the child, there is no requirement that every factor considered be established by clear and convincing evidence; rather, after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the child.

*Renfro v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 419, at 9, 385 S.W.3d 285, 289. Clear and convincing evidence is that degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established. *Washington v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 293. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due deference to the circuit court's opportunity to judge the credibility of the witnesses. *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.*

A circuit court is only required to consider potential harm to a child's health and safety that might come from continued contact with the parents; there is no requirement to find that actual harm would result or identify the potential harm. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, at 11, 379 S.W.3d 703, 709. The potential-harm analysis is to be conducted in broad terms. *Id.* Furthermore, the juvenile's need for permanency and stability overrides a parent's request for additional time to improve circumstances, and courts will not enforce parental rights to the detriment of the well-being of the child. *Contreras v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 604, at 6, 474 S.W.3d 510, 514. The intent of the statute is to provide permanency in the child's life in all circumstances where a return to the parent is contrary to the juvenile's health, safety, or welfare and cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *Id.* Past behavior serves as a predictor of potential harm to the child if returned to the parent's custody. *Whittiker v. Ark.*

SLIP OPINION

*Dep't Human Servs.*, 2015 Ark. App. 467, at 8, 469 S.W.3d 396, 401. Prior terminations may be considered as an indicator of potential harm. *See Drake v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 475, at 6, 442 S.W.3d 5, 8 (where we held that the circuit court did not err when it found that appellant was not successfully managing the very issues that resulted in the prior terminations and a potential threat of harm remained to the minor child as a result).

### B. Analysis

McElwee argues that because M.M. had been placed with a relative, the circuit court was in error for terminating his parental rights instead of choosing the less restrictive option of permanent custody with the relative. We disagree, and we affirm.

Arkansas law permits a trial court to set termination or adoption as the case goal even when a relative is available and requests custody. Ark. Code Ann. § 9–27–338(c)(1)–(6); *Davis v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 469, 375 S.W.3d 721. Arkansas Code Annotated section 9–27–338(c)(1)–(6) lists the permanency goals that the circuit court is to consider in determining the best interest of the children. The top preference is to return the juvenile to the parents if it is in the best interest of the juvenile and the juvenile's health and safety can be adequately safeguarded if returned home. *See* Ark. Code Ann. § 9–27–338(c)(1). The second preference is adoption, unless the juvenile is being cared for by a relative and termination of parental rights is not in the best interest of the juvenile. *See* Ark. Code Ann. § 9–27–338(c)(2); *Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, 15, 344 S.W.3d 670, 678; *Hall v. Ark. Dep't of Human Servs.*, 101 Ark. App. 417, 278 S.W.3d 609 (2008). Permanent relative placement is listed as the fourth preference. See Ark. Code Ann. § 9–27–338(c)(4). Thus,

according to the public policy of this state, termination and adoption are preferred to permanent relative placement.

McElwee argues that the facts of the present case are similar to *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851. In *Cranford*, where this court reversed the circuit court's finding that it was in the best interest of the child to terminate parental rights where the minor child had been placed with his grandparents. We held that the evidence was insufficient to establish that termination of either parent's parental rights would serve the child's best interest because there was no danger in allowing the parents to have continued contact with the child. *Id*. at 11–12, 378 S.W.3d at 856–57.

There is some similarity between *Cranford* and the present case in that the minor child had been placed with a relative; however, the differences between the cases are determinative. In *Cranford*, there was no evidence of abuse, whereas in the present case M.M. had a one-and-a-half-inch by four-inch burn on his leg that the physician stated was not caused by contact with a heating vent, as the parents had claimed. In *Cranford*, domestic abuse was not an issue; however, in the present case, the child was removed from the home because of McElwee's physical abuse of Melody, which he denied had ever occurred. Also, drug abuse was not present in *Cranford*, whereas drug-related issues are at the core of this case. At the time of the termination hearing, McElwee was serving a lengthy prison sentence for delivery of methamphetamine. During the pendency of the case, he had been arrested on other drug-related charges and had been incarcerated for short periods of time and then released. The only evidence McElwee presented to indicate he had sought help with his drug issues was his own

testimony that he had attended NA meetings while incarcerated. He did not provide documentation of his attendance. Clearly, the facts in this case are different from the facts in *Cranford* in that they support the circuit court's finding that it was in M.M.'s best interest to terminate McElwee's parental rights.

The circuit court in the present case found by clear and convincing evidence that it was in the best interest of M.M. to terminate parental rights. In making its best-interest finding, the circuit court specifically considered the likelihood of potential harm to the health and safety of the juvenile if he was returned to the custody of the parents: "The Court finds that the juvenile would be at great risk of harm if returned to the parents due to their drug use, mental-health issues, and inability to conform their behavior to the requirements of the law as evidenced by their chronic incarceration." We hold that the circuit court's conclusion that termination of McElwee's parental rights was in M.M.'s best interest was not clearly erroneous.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Tabitha B. McNulty*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.