

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-17-512

LYLE WHITE

APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND MINOR
CHILD

APPELLEES

**Opinion Delivered** October 18, 2017

APPEAL FROM THE MADISON
COUNTY CIRCUIT COURT
[NO. 44JV-16-5]

HONORABLE STACEY
ZIMMERMAN, JUDGE

AFFIRMED

## N. MARK KLAPPENBACH, Judge

Lyle White appeals the Madison County Circuit Court order terminating his parental rights to his daughter, AH. On appeal, White challenges the circuit court's finding that termination of his parental rights was in AH's best interest. We affirm.

The Arkansas Department of Human Services (DHS) removed AH from the custody of her mother, Kelsey Hull, soon after her birth in January 2016. Hull and the newborn both tested positive for methamphetamine, amphetamines, benzodiazepines, and opiates. Hospital staff reported that Hull had been leaving the hospital and returning smelling of alcohol. Additionally, she was homeless. Hull's mother, Kathy Green, was the permanent guardian of Hull's oldest child, and Hull's sister had been caring for her other son.

White appeared at the probable-cause hearing, where the circuit court ordered that he have visitation with AH at the hospital, communicate with the caseworker, submit to drug screens, obtain and maintain stable housing and employment, and demonstrate the

ability to protect the child from harm. White failed to appear for the February 26, 2016 adjudication hearing, and the court found that he had not submitted to a drug screen or visited the child since the probable-cause hearing. The circuit court found that AH was dependent-neglected due to neglect and parental unfitness and that she had been subjected to aggravated circumstances. AH remained in the custody of DHS, but she was moved to the provisional foster home of her maternal grandmother, Kathy Green. In addition to the court's prior orders, White was ordered to participate in individual counseling, have a drug-and-alcohol assessment, and complete parenting classes.

On April 22, 2016, the circuit court ordered that reunification services would no longer be provided and authorized a plan for termination of parental rights and adoption. White had failed to appear for the hearings on this date, and the court found that he had not availed himself of services or visits. After a termination hearing in June 2016, the court terminated Hull's parental rights but denied the petition as to White. The court found that White was entitled to more time because he had not been transported from prison for the no-reunification-services and permanency-planning hearings, and he was not represented by counsel at those hearings despite having filed a pro se motion for appointment of counsel.[1] The court additionally noted that White had sent letters to the court, he was the nonoffending parent in the case, and he had testified about taking classes in prison. However, the court also found that White had been incarcerated for most of the case, was

_____

[1]White had been appointed counsel prior to the termination hearing.

SLIP OPINION

currently incarcerated on a parole violation, and had new pending charges. Reunification with White was set as the new goal of the case, and a permanency-planning hearing was scheduled. The court later granted White's motion to continue the hearing until after his release from prison, but White was again incarcerated when the hearing was held in January 2017. The court again authorized a plan for adoption.

White testified at the February 2017 termination hearing that he was incarcerated for violating his parole and expected to be released in June. He had been released from prison on the day AH was born in January 2016 after serving about six months for a parole violation on the underlying conviction of possession of methamphetamine. White said that he was present for the first thirteen days of AH's life when she was hospitalized. He was arrested again, however, around March 13, 2016, for possession of drugs. White claimed that he was "just somewhere where everybody got charged." He was convicted of that charge and incarcerated from March 2016 to November 23, 2016. After being released on parole, he was arrested for possession of methamphetamine around December 13, 2016. White said that this charge was due to "riding around with the wrong people." He was awaiting trial on this charge, but he believed it would be dropped.

White wanted Green to have permanent custody, but he claimed that once he was released he would have a job and could provide love and support to AH. AH had been placed with Green since February 2016, and White had not had any visitation during that time. AH did not know him. Green testified that she wanted to adopt AH and had been

3

SLIP OPINION

approved as an adoptive home. The caseworker testified that White had not complied with any court orders and that AH's permanency was more important than granting more time to White.

The circuit court found that two statutory grounds for termination existed and that termination was in AH's best interest. On appeal, White argues that termination was not in AH's best interest in light of her placement with her maternal grandmother. He does not challenge the grounds for termination, and he concedes that AH is adoptable.

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Repl. 2015). Clear and convincing evidence is that degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established. *McElwee v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 214, 489 S.W.3d 704. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due deference to the circuit court's opportunity to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.*

4

SLIP OPINION

A circuit court is required to consider only potential harm to a child's health and safety that might come from continued contact with the parents; there is no requirement to find that actual harm would result or identify the potential harm. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. Furthermore, the juvenile's need for permanency and stability overrides a parent's request for additional time to improve circumstances, and courts will not enforce parental rights to the detriment of the well-being of the child. *McElwee, supra*. The intent of the termination statute is to provide permanency in the child's life in all circumstances where a return to the parent is contrary to the juvenile's health, safety, or welfare and cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *Id*.

White contends that there would be no harm to AH if his rights were not terminated because she could remain in the care of her grandmother, and he could establish a relationship with her once he is released from prison. Citing *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851, and *Bunch v. Arkansas Department of Human Services*, 2017 Ark. App. 374, 523 S.W.3d 913, White argues that termination was not necessary to achieve permanency and stability for the child. In those cases, this court reversed the termination of parental rights upon finding that termination was not in the best interest of the children based on the custody arrangement and other factors. AH, like the children in *Cranford* and *Bunch*, was living with her grandparents, but other factors distinguish White's case.

SLIP OPINION

In *Cranford*, the child's father was incarcerated at the time of the termination hearing, but he anticipated being released in six weeks and had demonstrated stability in housing and employment before his incarceration. The grandmother testified that she wanted both parents to remain in the child's life and have regular visitation. *Cranford, supra*. In *Bunch*, we held that the mother had complied with many aspects of the case plan and that there was ample evidence that continued contact with her was in the children's best interest. The case at bar is more akin to *Brumley v. Arkansas Department of Human Services*, 2015 Ark. 356, in which the father had been incarcerated for most of the child's life, had no relationship with the child, and lacked essential components of the case plan as a result of his continued incarceration. Despite the fact that the child was being cared for by relatives, the supreme court held that termination of parental rights was in the child's best interest where the evidence did not reflect any stability or reasonable hope for reunification. *Brumley, supra*; *see also Scrivner v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 316, 497 S.W.3d 206 (affirming best-interest finding of children placed with grandmother where father had repeated incarcerations, faced pending charges, had substance-abuse issues, and had failed to comply with case plan).

White had a series of drug charges dating back to at least 2009, and new charges and parole violations led to his chronic incarceration. He was convicted of a new drug offense during the pendency of this case, and he had an unresolved drug charge at the time of the termination hearing. White blamed being around the wrong people for these charges, but

it is clear that his own poor choices led to his arrests and demonstrated the potential harm to AH. According to White's testimony, he had been incarcerated for approximately seventeen of the last twenty months, and he anticipated that he would remain incarcerated for at least the next four months. In the brief periods he was not incarcerated, White failed to comply with the case plan. As the circuit court found, White's failure to demonstrate stability or sobriety created an undue risk of harm to AH if she was placed in his custody. Based on these facts, the circuit court's finding that termination was in the child's best interest was not clearly erroneous.

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Dusti Standridge*, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.