BRANDON J. HARRISON, Judge *113 Donna Swangel appeals the termination of her parental rights to her children J.S., R.M., and A.R. Donna raises three points on appeal: the circuit court lacked jurisdiction to enter a termination order as to R.M.; there was insufficient evidence that a termination was in her children's best interest; and the circuit court did not follow the Indian Child Welfare Act (ICWA). We affirm.
Donna first argues that the circuit court lacked jurisdiction to terminate her parental rights to R.M. because the Arkansas Department of Human Services (DHS) did not file a petition seeking to terminate her rights to R.M., serve her with such a petition, or provide her with any notice that her rights as to R.M. were at issue. In other words, Donna contends that DHS only sought to terminate her parental rights to J.S. and A.R.
II. Best Interest
Donna's children were removed, in part, because of her suspected drug use (methamphetamine), which was later proved and continued essentially throughout the nearly two years this case was pending. She does not challenge any statutory ground for the termination but does argue that the termination was not in her children's best interest. In Donna's view, terminating her parental rights was a "draconian measure" because two of the children were placed with an aunt, and termination would not have furthered stability or permanency because continued contact with a parent would have been beneficial.
We review termination-of-parental-rights cases de novo but do not reverse unless the circuit court's findings are clearly erroneous. Miller v. Ark. Dep't of Humans Servs. , 2016 Ark. App. 239, at 7, 492 S.W.3d 113, 117. An order terminating parental rights must be based on a finding by clear and convincing evidence that one of the grounds stated in the termination statute is satisfied and that the sought-after termination is in the children's best interest. Id. In making a best-interest determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. Id.
The court considered Joey Musgrove's evidence that R.M. should live with him in Florida if the court terminated Donna's parental rights. (Recall that he is R.M.'s legal father.) In its termination order the circuit court credited Miranda Zeltner's testimony that Estes wished to adopt the children, and there were no foreseeable barriers preventing an adoption from occurring. The court stated that it was "gravely" concerned about Donna's ongoing drug issues, including dating men who are users. Out of thirty-seven drug tests introduced, twenty-eight were positive for methamphetamine. The court observed that Donna admitted that she had been given notice by her landlord that she was being evicted because of drug use on the premises. The court also found that Donna had obtained illegal substances but lacked electricity, could not meet her children's basic needs, and could not keep them safe because of her addiction. The court found that a substantial risk of harm existed because Donna could not maintain sobriety throughout the case.
The court's best-interest finding was not clearly erroneous. It may consider past behavior as a predictor of likely future harm if the children were returned to her. Harbin v. Ark. Dep't of Human Servs. , 2014 Ark. App. 715, at 3, 451 S.W.3d 231, 233. By statute, the circuit court is not required to find that actual harm would result. L.W. v. Ark. Dep't of Human Servs. , 2011 Ark. App. 44, 380 S.W.3d 489. The potential-harm evidence, moreover, must be viewed in a forward-looking manner and considered in broad terms. Id. Donna's use of methamphetamine is sufficient evidence of potential harm given her long history with the drug. Furnish v. Ark. Dep't of Human Servs. , 2017 Ark. App. 511, at 13, 529 S.W.3d 684, 692 (a parent's continuing use of illegal drugs poses a risk of harm to the children if returned to that parent). The court's best-interest determination is largely a credibility call, and we defer to its decision on that point.
That two of the children had been placed with a relative does not undermine the court's best-interest finding. Donna asks us to reverse the court's decision given (1) her therapist's testimony that the children were bonded to her, (2) that DHS had failed her in meaningful ways, (3) that the children's placement across the state hindered family therapy, and (4) it was in the children's best interest to maintain a relationship with their mother.
Arkansas law permits a circuit court to set termination or adoption as the case goal even when a relative is available and requests custody. Ark. Code Ann. § 9-27-338(c)(1)-(6) (Supp. 2017). Arkansas Code Annotated section 9-27-338(c)(1)-(6) lists the permanency goals that the circuit court is to consider in determining the best interest of the children. The first preference is to return the juvenile to the parents if it is in the best interest of the juvenile and the child's health and safety can be adequately safeguarded if returned home. Ark. Code Ann. § 9-27-338(c)(1). The second preference is adoption, unless the juvenile is being cared for by a relative and terminating parental rights is not in the best interest of the juvenile. Ark. Code Ann. § 9-27-338(c)(2). Permanent relative placement is the fourth preference. Ark. Code Ann. § 9-27-338(c)(4). Arkansas's public policy prefers termination and adoption over permanent relative placement. McElwee v. Ark. Dep't of Human Servs. , 2016 Ark. App. 214, at 8-9, 489 S.W.3d 704, 708-09.
*115 The circuit court had set the case goal for the children to be adoption and termination of Donna's parental rights at the permanency-planning stage, which Donna did not appeal. And the court carried out this permanency-through-adoption goal in its termination order.
Donna cites Bunch v. Arkansas Department of Human Services , 2017 Ark. App. 374, 523 S.W.3d 913 and other cases leading up to Bunch for reversal. The facts in Bunch are similar to this case; but not close enough so that Bunch dictates the outcome. There, the children were living with their maternal grandmother, who had expressed a willingness and desire to adopt them, when the termination occurred. Id. The DHS caseworker recommended that the grandmother adopt the children. Id. The mother lived in an appropriate house and was trying to find employment. She had only one positive marijuana test several months before the termination hearing. Id. She had ended the relationship with the children's father, who had consistently tested positive for drugs throughout the case. In a divided opinion, this court held:
In DHS caseworker Jennifer Matney's testimony she expressed the desire for the children to be adopted by their grandmother, thereby remaining in her custody, and to continue having contact with their mother. This being so, as in Cranford , there is no urgency for permanency and stability in this case because, whether or not termination occurs, the children will remain in the custody of their grandmother in the same place they have lived since shortly after their removal from Haylee's custody. Particularly in light of the undisputed bond between these children and their mother, we see little harm in affording Haylee more time toward reunification, and such efforts come with a potential benefit to the children.
Id. at 9, 523 S.W.3d at 918-19.
Unlike Bunch , two of Donna's children had only recently been moved from therapeutic foster care to an aunt's home, and the other child remained in therapeutic foster care. They had not been staying with a relative during the entire pendency of the case. And instead of the mother failing one marijuana test months before the termination hearing, Donna tested positive for methamphetamine twenty-eight times; and all three children tested positive for methamphetamine upon entering DHS custody. Also, Donna failed to show sobriety and stability throughout the nearly two years this case was before the circuit court.
Donna herself acknowledged during the termination hearing that she was not yet ready to receive her children. Nearly two years of uncertainty is significant when viewed from the children's perspective: J.S. was nine, R.M. was eight, and A.R. was six when the termination hearing began. And as we have stated, drug-related issues can support a court's finding of potential harm, even when a child is placed with a relative. White v. Ark. Dep't of Human Servs. , 2017 Ark. App. 529, at 6, 530 S.W.3d 402, 405 ; Furnish v. Ark. Dep't of Human Servs. , 2017 Ark. App. 511, at 13, 529 S.W.3d 684, 692. Because the circuit court's best-interest determination is not clearly erroneous, we affirm it.
III. ICWA
The last point Donna argues is that the circuit court failed to comply with the Indian Child Welfare Act. A.R. is a Native American child. Pursuant to ICWA, "[n]o termination of parental rights may be ordered ... in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified *116 expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f).
We hold that Donna's argument is not preserved for review. Challenges to the expert qualification of the ICWA representative in a termination-of-parental-rights case must be raised and ruled on in the circuit court before they may be raised on appeal. More specifically, recent caselaw from this court holds that a parent must object when a purported ICWA expert testifies to preserve an argument about that expert's legal efficacy under ICWA. In Johnson v. Arkansas Department of Human Services , this court held that the argument "DHS was required to present 'expert testimony' in proving its case under the ICWA, that DHS did not present any expert witnesses, and that consequently it failed to present sufficient evidence to support the termination of parental rights" could not be raised for the first time on appeal because it was an evidentiary argument, not a sufficiency-of-the-proof issue. 2016 Ark. App. 49, at 3, 481 S.W.3d 463, 465. And in Howell v. Arkansas Department of Human Services , a six-judge panel rejected a parent's request to overrule Johnson . 2017 Ark. App. 154, at 9, 517 S.W.3d 431, 437 (rejecting argument that we should apply the same standard to experts testifying in an ICWA case as we do to expert testimony in a medical-malpractice case). This three-judge panel is bound by Howell , and under that case, Donna's ICWA argument is procedurally barred.
Affirmed.