Cite as 2021 Ark. App. 203

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-20-716

| | |
|---|---|
| KRISTIN TAYLOR<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** May 5, 2021<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26JV-18-302]<br><br>HONORABLE LYNN WILLIAMS, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## BRANDON J. HARRISON, Chief Judge

Kristin Taylor appeals a Garland County Circuit Court order terminating her parental rights to her children, BT, MT, NT, and PT. (The order also terminated the parental rights of the children's father, but he is not a party to this appeal.) Taylor's counsel has filed a no-merit brief and motion to withdraw as counsel pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup. Ct. R. 6-9(i) (2020). The clerk of this court delivered a copy of counsel's brief and motion to withdraw to Taylor at her address of record, advising her of her right to file pro se points for reversal pursuant to Ark. Sup. Ct. R. 6-9(j)(3), but the packet was returned marked Return to Sender/Unable to Forward. We affirm the circuit court's order and grant counsel's motion to withdraw.

The Arkansas Department of Human Services (DHS) began receiving hotline calls on this family in June 2015. In March 2016, DHS made a true finding of inadequate supervision and opened a dependency-neglect case from March 2016 to February 2017. BT, MT, and later, NT resided in foster care during that time and returned to their father's custody in February 2017. On Friday, 28 September 2018, DHS visited the family's home after receiving reports of environmental neglect and inadequate food. Five-year-old BT and four-year-old MT both reported that they felt safe at home, had plenty to eat, and took a bath every day. However, the children were wearing dirty clothes, appeared not to have bathed in a few days, and had on mismatched shoes that were for the same foot. Two-year-old NT was dressed in only a soggy diaper. All three children had multiple bug bites; BT said there were bugs in his bed that bite him while he is sleeping. Four-month-old PT appeared to not have been bathed in several days.

Taylor told DHS workers that she had just been released from the hospital after suffering a mental breakdown. She admitted using methamphetamine on Tuesday of that week and tested positive for amphetamines, methamphetamines, buprenorphine, and benzodiazepines. Taylor said it would be okay for DHS to remove the children from the home "because she thinks it might be best for them at this time, but only if she gets them back." DHS workers told the parents to work together over the weekend to get the house clean and that the situation would be reassessed on Monday.

On Sunday morning, however, DHS received a report that Taylor had left the home with PT, leaving the father to take care of the rest of the children. The father reported that he could not take care of the children and asked DHS to take them. DHS took the three

children, contacted Taylor, and asked her to come to the DHS office as soon as possible. When Taylor finally arrived the next day, PT was also taken into DHS custody.

The circuit court granted emergency custody of the children and later adjudicated them dependent-neglected based on "parental unfitness, environmental neglect[,] and inadequate supervision due to the parent's emotional instability and abuse of illegal substances." The court reviewed the case in February 2019 and found Taylor continued to test positive for multiple illegal substances. Three months later, the court found that Taylor "continue[d] to be mentally unstable having relapsed in regard to her drug usage in late February and had two psychiatric hospital stays this review period."

The court entered a permanency-planning order in September 2019 and placed the children in the temporary custody of their father. The court found that the goal of the case should be permanent custodial placement with the father, as he had been complying with the case plan and making significant, measurable progress. In contrast, the court found that Taylor had "not made significant and measurable progress" and had "not worked diligently" toward reunification. The court reviewed the case in December 2019 and again found that Taylor had not demonstrated progress.

In February 2020, DHS removed the children from the father's custody after he relapsed on his methamphetamine use. The father had been gone for several days and left the children in Taylor's care; DHS workers observed that Taylor appeared to be under the influence and mentally unstable. Taylor tested positive for buprenorphine and benzodiazepine. The circuit court reviewed the case and found:

> The mother has not complied with the case plan and the orders of the Court. Specifically, she has not completed drug treatment; she had no

3

visitation with the children for many weeks; she had not contacted the Department in many weeks; she has not participated in individual counseling or parenting classes; she's not maintained sobriety or emotional stability for any length of time. She now finds herself in the Garland County Detention Facility facing new drug possession charges.

In May 2020, the circuit court changed the goal of the case to authorizing a plan for adoption with DHS filing a petition for termination of parental rights. It found that while the parents had begun complying with the case plan, it could not expect that placement of the children with either parent could occur within a time frame consistent with the children's developmental needs.

On 8 July 2020, DHS petitioned to terminate parental rights citing statutory grounds of failure to remedy cause of removal, failure to provide significant material support, failure to maintain meaningful contact, failure to remedy subsequent factors, and subjecting the children to aggravated circumstances. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a), (ii)(a), (vii) & (ix)(*a*)(*3*)(*A*) (Repl. 2020). The circuit court convened a hearing, at which Cindy Stroud, a DHS supervisor, recounted the history of events throughout the case. Stroud opined that neither parent had made measurable progress, nor were the parents in a position to provide stability and safety for the children. Katelynn Cottrell, an adoption specialist, testified that she ran a data match on the four children that resulted in fifty-three potential adoptive homes. She said she considered the children adoptable and expected to find a forever home for them.

Taylor testified that she is currently living in a treatment facility that does not permit children. She said that she loves her children "more than anything" and that while she had made some bad choices, she had also had some bad luck. She acknowledged that she does

4

not have adequate housing or a job. She explained that she was working to get her driver's license and that she would work with her treatment facility to secure adequate housing.

From the bench, the court found that it was in the best interest of the children to terminate parental rights. In its written order, the court terminated Taylor's parental rights based on all the statutory grounds alleged in the petition. The court found that the children are adoptable and would be subjected to potential harm if returned to either parent:

> [T]he parents continue to abuse illegal drugs; they lack stability and sobriety; they would not be able to provide the supervision necessary to keep the children safe. By their limited participation, the parents have evinced an indifference to [the] well-being of the juveniles; their behavior during this case indicates they would not or could not appropriately care for the juveniles if returned to their care; their lack of effort and interest now speaks to a lack of effort or interest later. It is not in the best interest of the juveniles to be returned to the care of the parents. The facts supporting the grounds for termination of parental rights also demonstrate how the children would be at risk of harm if returned to the parents.

Taylor has timely appealed the circuit court's order.

A circuit court's order that terminates parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3); *Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established. *Dinkins, supra.* On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Id.* Only one ground is

necessary to terminate parental rights. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).

Arkansas Supreme Court Rule 6-9(j)(1)(A) allows counsel for an appellant in a termination case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. Additionally, the petition's abstract and addendum must contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B). In evaluating a no-merit brief, the issue for the court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores, supra.*

In her no-merit brief, counsel explains that any challenge to the statutory grounds for termination of Taylor's parental rights would be frivolous. Counsel notes that proof of only one statutory ground for termination is required and argues that, in this case, there was sufficient evidence to support the aggravated-circumstances ground, which states that parental rights may be terminated when a court has determined that there is little likelihood that services to the family will result in successful reunification. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*A*) & (*B*). Counsel explains that Taylor had been receiving services since her children had been removed in 2016, and yet at the time of the termination hearing, she was still not in a position to have the children placed in her custody. Taylor

had not completed many of the services ordered by the court and had not shown that she could care for her children outside of a supervised visit. Counsel contends that no meritorious argument can be made that the circuit court erred in finding that there was little likelihood that further services would result in reunification.

With regard to best interest, counsel notes that the adoption specialist's testimony provided sufficient evidence that the children are adoptable. Counsel also argues that the circuit court had sufficient evidence to find potential harm, noting Taylor's history of overall instability, lack of compliance, and frequent relapses. Based on this evidence, and the tenet that past behavior can be a predictor of likely potential harm, counsel contends that the circuit court did not clearly err in finding that termination is in the children's best interest. *See Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694 (stating that a parent's past behavior is often a good indicator of future behavior).

Out of an abundance of caution, counsel also addresses Taylor's expressed desire to reunite with her children, which could be construed as a request for additional time to work toward reunification. By terminating Taylor's parental rights, the circuit court denied that request. Counsel argues that no meritorious argument can be made that the court erred in denying the request because a child's need for permanency overrides a parent's request for additional time to improve circumstances, and courts will not enforce parental rights to the detriment of the well-being of the child. *McElwee v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 214, 489 S.W.3d 704.

We agree that the circuit court did not clearly err in finding that it was in the children's best interest for Taylor's rights to be terminated and that statutory grounds for

termination existed.  We grant counsel's motion to withdraw and affirm the termination of Taylor's parental rights.

Affirmed; motion to withdraw granted.

ABRAMSON and GRUBER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Dana McClain*, attorney ad litem for minor children.