

Cite as 2015 Ark. App. 604

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–15–467

PORFIRIO CONTRERAS
APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND MINOR
CHILD
APPELLEES

Opinion Delivered October 28, 2015

APPEAL FROM THE LOGAN
COUNTY CIRCUIT COURT,
NORTHERN DISTRICT
[NO. 42PJV–13–24]

HONORABLE TERRY SULLIVAN,
JUDGE

AFFIRMED

## BART F. VIRDEN, Judge

The Logan County Circuit Court terminated appellant Porfirio Contreras's parental rights to his son, A.C. (DOB: 2-12-2012).[1] Contreras argues that there was insufficient evidence to support the termination. Specifically, he contends that the Arkansas Department of Human Services (DHS) failed to satisfy its burden of proving that he was offered appropriate family services and that he was penalized for having a pending criminal charge without a conviction. We affirm.

I.    *Procedural History*

In September 2013, DHS filed a petition for emergency custody and dependency-

---

[1] The trial court also terminated the parental rights of Dawn Ratcliff, the child's mother, but she is not a party to this appeal.

neglect of A.C. and his older brother, C.R.[2] In an affidavit, a DHS case worker attested that she had received a report that law-enforcement officers were working an automobile accident involving Jeremy and Dawn Ratcliff, along with A.C., who was not in a car seat. During the investigation, they learned that the couple had left their three-year-old child, C.R., at home alone. The Ratcliffs were charged with endangering the welfare of a minor in the first degree as to both boys. In an order entered in January 2014, the children were adjudicated dependent-neglected by stipulation of the parties. In a review order dated February 26, 2014, the trial court found that Contreras had visited with A.C. and had cooperated with DHS. He was ordered to work the case plan, comply with court orders, cooperate with DHS, and make himself available for visitation. In a review order dated September 11, 2014, the trial court found that Contreras had made progress with respect to the case plan but that he was not a placement option because he had pending criminal charges. He was ordered to cooperate with DHS and to comply with court orders and the case plan. In a permanency-planning order dated January 15, 2015, the goal of the case was changed to termination of parental rights and adoption. In all of these court orders, the trial court found that DHS had made reasonable efforts to provide reunification services.

In its petition for termination of both Dawn's and Contreras's parental rights to A.C., DHS cited several grounds under Ark. Code Ann. § 9-27-341(b)(3)(B) (Repl. 2013), but it is undisputed that only two of those grounds could have applied to Contreras: (vii)

---

[2]Custody of C.R. was eventually awarded to the child's biological father, Shelby Ingram.



(subsequent factors) and (ix) (aggravated circumstances). A hearing was held on February 4, 2015.

## II. *Termination Hearing*

Stephanie Doherty, family service worker for DHS, testified that Contreras had visited A.C. except when the child was sick; that Contreras did "all right" with his parenting skills; that he had brought A.C. breakfast and toys; that they had played together; that there was great interaction; and that there was a good bond between them.[3] Doherty stated that Contreras was employed but was paid cash "under the table." Doherty testified that Contreras had "bounced" from home to home and was currently living with his girlfriend and her five-month-old baby. Doherty also stated that DHS had discovered that Contreras was on three years' probation for a drug charge in Yell County and that he had pending criminal charges in Pope County for sexual abuse of a minor. There was evidence that on June 12, 2014, a report was made to the Crimes Against Children Division of the Arkansas State Police regarding a twenty-eight-year-old man named Eli Cono having sex twice with a fifteen-year-old girl who became pregnant. It was later determined that Eli Cono was Porfirio Contreras, and an investigation into the matter led to true findings for sexual abuse and substance misuse.

Contreras acknowledged that he had pleaded guilty to possession of methamphetamine in March 2014 for which he had received probation. According to

---

[3]Doherty referenced a case plan in her testimony, but it is not in the addendum or the record.

Contreras, the drug was actually Ritalin, and he was complying with the terms of his probation. Contreras said that he was charged with fourth-degree sexual abuse and that, although the prosecutor had offered him approximately thirty months' probation, he chose to go to trial—scheduled for March 2015—because he had proof that he did not know that the girl was underage. Contreras also conceded that he had been charged with murder when he was a juvenile. Contreras testified that he was a plumber and worked approximately twenty to thirty hours per week. Contreras said that, because of his recent legal trouble, he was forced to quit college and, although he had been ordered to pay the minimum amount of child support—sixty dollars every two weeks—he was behind on payments. According to Contreras, although he had been staying with his girlfriend off and on since July 2014, he had only been living with her for a few weeks, and the lease was in his girlfriend's name. Finally, he acknowledged that it was "horrible" that A.C. had been in DHS custody for more than half of his life. Contreras said that he hoped that it would not take too long for him to get his situation resolved in order for A.C. to be placed with him.

At the conclusion of the hearing, the trial court ruled that there was "just absolutely too much chaos" in Contreras's life and, in its order terminating his parental rights, the trial court found that termination was in A.C.'s best interest. While the trial court did not specify which grounds applied to Contreras, the trial court concluded that

> [t]he father loves his child and he was doing well with services and was a possible placement option. He has visited with the juvenile and they have a bond. However, the father picked up new drug charges in March 2014, and failed to advise the Court or DHS of his new charges. He also has a trial pending March 2015 for charges of sexual abuse with a minor. He has lived in two to three homes since this case has been open and this child needs permanency. Even if the father is found not guilty of his

pending charges in Pope County, he would not be a viable placement option because he would still have pending criminal charges for drug possession.

### III.    *Standard of Review and Applicable Law*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted, and (2) the potential harm, specifically addressing the effect on the health and safety of the child caused by returning the child to the custody of the parent. Ark. Code Ann. § 9–27–341(b)(3)(A). Additionally, the trial court must find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9–27–341(b)(3)(B). However, proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205.

The two grounds applicable to Contreras are listed in section 9-27–341(b)(3)(B) as follows:

> (vii)(*a*) That other factors or issues arose subsequent to the filing of the original petition for dependency–neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
>
> . . . .
>
> (ix)(*a*) The parent is found by a court of competent jurisdiction . . . to:
>
> . . . .
>
> (*3*)(*A*) Have subjected any juvenile to aggravated circumstances.

SLIP OPINION

(*B*) "Aggravated circumstances" means:

(*i*) . . . a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification . . .

Ark. Code Ann. § 9–27–341(b)(3)(B)(vii) & (ix).

Termination-of-parental-rights cases are reviewed de novo. *Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.* The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id.* Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

The intent of our termination statute is to provide permanency in a juvenile's life in all circumstances where return to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark. Code Ann. § 9–27–341(a)(3). Furthermore, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Fredrick*

*v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 104, 377 S.W.3d 306.

## IV. *Argument*

Contreras does not challenge the trial court's best-interest determination; instead, he argues that DHS failed to prove that it had provided reunification services to him, which he contends is "an element" of each of the two applicable grounds. According to Contreras, the evidence shows that "DHS abjectly failed to offer [him] any services beyond visitation and a home study." Contreras acknowledges that the trial court found in the review and permanency-planning orders that DHS had made reasonable efforts to provide services, but he contends that he did not have an opportunity to challenge those findings because the orders were not final given that they did not contain a certificate pursuant to Ark. R. Civ. P. 54(b).[4]

In addition, Contreras contends that his legal trouble was an insufficient ground on which to terminate his parental rights. He maintains that the drug conviction occurred about one year prior to the termination hearing and that he had been in compliance with the terms of his probation. With respect to the subsequent charge of sexual abuse of a minor, Contreras asserts that it was only pending—he had not been convicted and had a defense to the charge.

---

[4]Rule 6-9(a)(1) of the Rules of the Arkansas Supreme Court and Court of Appeals provides that certain orders may be appealed from in dependency-neglect cases, including disposition, review, no reunification, and permanency planning orders *if the court directs entry of a final judgment as to one or more of the issues or parties based upon the express determination by the court supported by factual findings that there is no just reason for delay of an appeal, in accordance with Ark. R. Civ. P. 54(b)*. Ark. Sup. Ct. R. 6-9(a)(1)(B) (emphasis added).



V.  *Discussion*

The trial court found at each juncture of the proceedings that reasonable efforts had been made by DHS to provide Contreras with reunification services. A failure to challenge the court's prior "meaningful-efforts" findings precludes this court from now reviewing any adverse rulings resulting from those orders not appealed from. *Jones-Lee v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 160, 316 S.W.3d 261. *See also Stockstill v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 427, 439 S.W.3d 95 (even where this court was inclined to agree that DHS had failed to offer appropriate services to address father's specific issues, his failure to challenge multiple findings that DHS had in fact provided appropriate services precluded this court from reviewing the matter on appeal).

Contreras argues that *Henson v. Arkansas Department of Human Services*, 2014 Ark. App. 225, 434 S.W.3d 371, applies. In that termination-of-parental-rights case, the appellants challenged the trial court's finding that they had subjected their children to aggravated circumstances. DHS argued that the appellants were barred from raising that issue on appeal because the trial court had first made a determination that there was little likelihood that further services would result in successful reunification in a no-reunification-services order, which was a final order from which the appellants did not appeal. This court rejected DHS's argument and held that the appellants' challenge was not barred because the no-reunification-services order was not final in that it did not contain a Rule 54(b) certificate and was thus not appealable.

Contreras interprets the holding in *Henson* to mean that "DHS was required to prove

at the termination hearing a finding made within a prior order that was not appealable per rule." We disagree that *Henson* places any affirmative duty on DHS to re-prove factual findings made by the court in prior orders. In any event, regardless of the finality of the earlier orders, we note that Contreras had an opportunity to object to DHS's failure to provide services at the termination hearing, yet he failed to do so. His counsel argued, among other things, that Contreras should be given more time and be permitted to continue to have a relationship with his son. There was no mention of reunification services even in connection with Contreras's request to be granted "three more months to get his situation in line." Contreras raised no objection below and does not indicate what particular reunification services DHS could have but did not offer him. He only asked that he be given more time. Although we might have agreed that DHS did not provide adequate reunification services, the issue is waived. *See Weathers v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 142, 433 S.W.3d 271 (where mother failed to object during the termination hearing, any DHS services–related issue was waived).

The evidence was sufficient to terminate Contreras's parental rights based on the ground under Ark. Code Ann. § 9-27-341(b)(3)(B)(vii) in that, subsequent to the filing of DHS's petition and six months after A.C. had been placed in DHS custody, Contreras pleaded guilty to possession of methamphetamine and was placed on three years' probation. Within a few months of being on probation, it was discovered that Contreras had sex with a minor using an alias. He admitted committing the offense and, although he was offered probation in a plea deal, he rejected that, choosing instead to risk receiving a prison sentence.

These illegal activities occurred during the time that Contreras was attempting to get custody of his son, calling into question his judgment and priorities. Also, the testimony established that Contreras had not obtained a stable home of his own during the sixteen months that A.C. was in DHS custody. At the time of the termination hearing, it remained uncertain whether Contreras would be in a position to care for A.C. in the foreseeable future. From our de novo review of the record, we cannot say that the trial court clearly erred in its decision to terminate Contreras's parental rights. Because DHS was required to prove only one statutory ground, we do not address the aggravated-circumstances ground. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495.

Affirmed.

GLOVER and VAUGHT, JJ., agree.

*Tabitha B. McNulty*, Arkansas Public Defender Commission, for appellant.

*Mischa K. Martin*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.