

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–16–405

| | |
|---|---|
| JOSHUA YARBROUGH <br> APPELLANT <br><br> V. <br><br> ARKANSAS DEPARTMENT OF <br> HUMAN SERVICES <br> APPELLEE | **Opinion Delivered** September 21, 2016 <br><br> APPEAL FROM THE JOHNSON <br> COUNTY CIRCUIT COURT <br> [NO. JV-2013-106] <br><br> HONORABLE KEN D. COKER, JR., <br> JUDGE <br><br><br> AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Joshua Yarbrough appeals from the order of the Johnson County Circuit Court terminating his parental rights to his three children, N.Y. (DOB 8/9/09), D.Y. (DOB 03/21/11), and J.Y. (DOB 04/17/13).[1] On appeal, Joshua challenges the sufficiency of the evidence to support the termination, arguing that there was no evidence that the Arkansas Department of Human Services (DHS) offered appropriate family services in a timely fashion. We affirm.

The facts giving rise to this case began on November 20, 2013, when DHS received a call from N.Y.'s daycare center with concerns that the child's mother, Candace Yarbrough, was under the influence of an unknown substance. Candace admitted that she would fail a drug test, and DHS placed a seventy-two-hour hold on the children. Both Candace and

---

[1] The circuit court's order also terminated the parental rights of the children's mother, Candace Yarbrough, but she is not a party to this appeal.

SLIP OPINION

Joshua tested positive for methamphetamine, amphetamine, marijuana, and opiates. DHS filed a petition for emergency custody on November 22, 2013.

An order for emergency custody was entered by the circuit court on November 22, 2013, and a probable-cause order was entered on December 17, 2013. The circuit court ordered Joshua to undergo random drug testing, obtain a drug-and-alcohol assessment and complete all recommendations, attend and complete parenting classes, and obtain and maintain stable housing and employment. Supervised visitation was awarded contingent upon the parents' negative drug screens.

The adjudication hearing was held on January 7, 2014, and the circuit court found that the children were dependent-neglected based on inadequate supervision due to the Yarbroughs' drug use. The goal of the case was set as reunification with the parents. At a review hearing in March 2014, Joshua was ordered to attend inpatient drug treatment, and the Yarbroughs were ordered to attend marriage counseling.

Following a June 2014 review hearing, a trial home visit with the children was authorized, and custody was then returned to the Yarbroughs at the August 2014 review hearing. Both parents were ordered to submit to homemaker services. On September 15, 2014, DHS filed an ex parte motion for an emergency change of custody, alleging that Candace was suffering from a delusional mental state, that Joshua was not concerned about her mental state, and that he was unable to ensure the health and safety of the children. An order granting an emergency change of custody was entered the same day; however, the circuit court returned the children at the probable-cause hearing on October 7, 2014, finding

that the emergency conditions necessitating removal no longer existed.

The children were again removed from the Yarbroughs' custody at the next review hearing on December 16, 2014, because they had both failed hair-follicle drug tests and would not allow DHS into their home. Joshua was ordered to attend and successfully complete outpatient drug treatment.

A permanency-planning hearing was held in March 2015, and the circuit court continued the goal of reunification with the parents, because it found that DHS had not provided outpatient drug treatment to Joshua as it had previously been ordered to do. The court stated that the issue of reasonable efforts by DHS would be taken under advisement and would be addressed at the next hearing.

At the next review hearing in September 2015, the circuit court found that DHS had made reasonable efforts to provide services to the Yarbroughs to achieve the goal of reunification. The court noted that Joshua was now incarcerated and ordered that he take advantage of the services offered while he was in prison, including substance-abuse treatment. A second permanency-planning order was entered on November 3, 2015, and the goal of the case was changed to adoption, with DHS being authorized to proceed with termination of parental rights. The circuit court again noted in that order that the issue of reasonable efforts by DHS would be taken under advisement and addressed at the next hearing.

A petition for termination of parental rights was filed on November 17, 2015. DHS alleged several grounds for termination, including the failure-to-remedy ground found in Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Repl. 2015) and the subsequent-factors ground found

in Ark. Code Ann. § 9-27-341(b)(3)(B)(vii). The petition further alleged that termination was in the children's best interest.

The termination hearing was held on February 2, 2016. At the hearing, Susan Geels, the caseworker assigned to the family, testified that DHS had provided services to the parents to accomplish the goal of reunification. Geels stated that Joshua had completed parenting classes and inpatient drug treatment in May 2014. However, he then failed his hair-follicle drug test in November 2014 and was ordered to complete outpatient drug treatment, which he had not done. Geels stated that Joshua had moved out of the family home in January 2015 and that he had relocated first to Ozark, Arkansas, and then to Missouri. She indicated that he had not maintained a stable home during that time and that he had been convicted of delivery of methamphetamine in August 2015. Geels testified that Joshua was currently in a prison boot camp while incarcerated and that he had obtained his GED and had completed a substance-abuse program. She stated that his release date was in June 2016. According to Geels, DHS believed that it was in the children's best interest for parental rights to be terminated. She testified that the likelihood of adoption was high because the children's current foster parents, who were Joshua's relatives, were interested in adopting all three of them.

Joshua testified that he was currently serving a forty-two-month prison sentence, to be followed by a seventy-two-month suspended imposition of sentence, and that he was involved in a boot-camp program. If he successfully completed that program, Joshua indicated that he could be released as early as March 2016. He testified that he had obtained

4

his GED and had attended substance-abuse education as part of the boot camp.  Joshua indicated that he and Candace were still married but that he was working on getting a divorce.  Upon his release from prison, Joshua stated that he was planning to reside with his girlfriend and that her brother had arranged a job for him.  He acknowledged that the DHS case had been going on for a long while but asked the circuit court for more time to reunify with his children.

After hearing all of the evidence, the circuit court entered a termination order on February 10, 2016, finding that the subsequent-factors ground for termination had been proved by clear and convincing evidence.  Specifically, the court found that Joshua had been arrested on drug charges nearly two years into the case and that he was currently serving a forty-two-month prison sentence.  The circuit court noted that, prior to his incarceration, Joshua did not have stable housing or employment; after his release from prison, Joshua's plan was to live with his girlfriend and to obtain a job through his girlfriend's brother, which the court found was also not a stable situation.  The court further noted that the two youngest children had spent more than half of their lives in foster care.  The court also found that there was clear and convincing evidence that termination of Joshua's parental rights was in the best interest of the children based on the likelihood that they would be adopted and the potential harm to their health and safety if they were to be returned to his custody.  Joshua timely appealed from the termination order.

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence.  Ark. Code Ann. § 9-27-341(b)(3); *Contreras v. Ark. Dep't*

*of Human Servs.*, 2015 Ark. App. 604, 474 S.W.3d 510. Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Contreras, supra.* On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

Pursuant to Ark. Code Ann. § 9-27-341(b)(3)(A), an order terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent. The order terminating parental rights also must be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B).

The sole ground relied on by the circuit court in this case was the subsequent-factors ground in Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*, which states as follows:

> That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Joshua argues on appeal that the circuit court erred in terminating his parental rights

because there was no evidence that DHS offered "appropriate family services" in a timely fashion, which he contends is a necessary element of the subsequent-factors ground. He does not otherwise challenge the sufficiency of the evidence supporting this ground for termination, nor does he challenge the circuit court's best-interest finding. Thus, we need not consider those issues. *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 242 S.W.3d 305 (2006).

In support of his argument, Joshua points to the March 2015 permanency-planning order in which the circuit court found that DHS had not provided the necessary services because it had not obtained outpatient drug treatment for him as ordered at the December 2014 review hearing. While he recognizes that the circuit court subsequently found at the September 2015 hearing that DHS had made reasonable efforts, he further references the circuit court's second permanency-planning order in November 2015 wherein the court again stated that it was taking the issue of DHS's reasonable efforts under advisement to be addressed at the next hearing. Joshua contends that there was no testimony by Geels that this drug treatment was ever offered to him, and he argues that, had DHS complied with its requirement to provide this treatment, it is reasonable to conclude that he would not have later been arrested for delivery of methamphetamine.

We find that Joshua has waived his argument that DHS failed to offer him appropriate services. While the circuit court did state in its March 2015 order that DHS had failed to offer outpatient drug treatment to Joshua, it then found at the next hearing that DHS had made reasonable efforts to provide services. Also, although the circuit court reserved ruling

SLIP OPINION

on the issue of services at the second permanency-planning hearing in November 2015, it then found that appropriate services had been provided by concluding that the subsequent-factors ground had been proved. Joshua did not appeal from the circuit court's previous findings that DHS had made reasonable efforts, nor did he raise this issue at the termination hearing. We have repeatedly held that the failure to appeal from a circuit court's prior meaningful-efforts findings precludes us from reviewing those adverse rulings. *See, e.g.*, *Contreras*, *supra*; *Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 90, 455 S.W.3d 347; *Weathers v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 142, 433 S.W.3d 271; *Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 526, 385 S.W.3d 373; *Fredrick v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 104, 377 S.W.3d 306.

Joshua argues that he did not have the opportunity to challenge the circuit court's previous findings because the orders were not final and appealable. He also cites to *Henson v. Arkansas Department of Human Services*, 2014 Ark. App. 225, 434 S.W.3d 371, in which this court held that the appellant's challenge to a prior finding of aggravated circumstances was not barred on appeal because the previous no-reunification order was not a final, appealable order. Based on *Henson*, Joshua contends that DHS was required to prove by clear and convincing evidence at the termination hearing that its efforts were meaningful.

We previously rejected a similar argument in *Contreras*, *supra*, where we held that *Henson* did not place any affirmative duty on DHS to reprove factual findings made by the circuit court in earlier orders. We further noted that the appellant in that case had an opportunity to object to DHS's failure to provide services at the termination hearing but that

8

he had failed to do so. *Contreras*, 2015 Ark. App. 604, at 8–9, 474 S.W.3d at 515–16. In this case, Joshua also had the opportunity at the termination hearing to raise the issue of whether DHS had provided appropriate services, but he did not do so. Instead, as in *Contreras*, he merely requested that the circuit court give him more time to reunify with his children. Thus, Joshua has waived the issue of whether appropriate services were provided to him.

Furthermore, Joshua has failed to specify which particular services should have been provided to him by DHS, other than the outpatient drug treatment. According to Geels's testimony, Joshua was ordered to undergo outpatient drug treatment in December 2014, but he moved out of the family home in January 2015, first relocating to Ozark and then to Missouri. He was subsequently arrested in July 2015 on the methamphetamine charges, and he remained incarcerated throughout the remainder of the case. At the September 2015 review hearing, Joshua was ordered to participate in any programs, such as drug treatment, that were offered in prison. He does not identify any other services that DHS could have, or should have, offered him while he was incarcerated. Thus, the circuit court's finding that appropriate services were provided to Joshua was not clearly erroneous, and we affirm the termination of Joshua's parental rights.

Affirmed.

GRUBER and WHITEAKER, JJ., agree.

*Tina Bowers Lee*, Ark. Pub. Defender Comm'n, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.