Cite as 2017 Ark. App. 115

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–16–1001

| | |
|---|---|
| JUAN TERRONES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | **Opinion Delivered:** March 1, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION<br>[NO. 60JV–2015–969]<br><br>HONORABLE WILEY A. BRANTON, JR., JUDGE<br><br>AFFIRMED |

### RAYMOND R. ABRAMSON, Judge

Juan Terrones appeals the Pulaski County Circuit Court order terminating his parental rights to his children M.T. and J.T. On appeal, Terrones argues that the circuit court erred in finding that (1) a statutory ground supported termination and (2) it was in the best interest of the children to terminate his parental rights. We affirm.

On July 5, 2015, the Arkansas Department of Human Services ("DHS") exercised an emergency hold over M.T., J.T., and their half-sibling, K.T., after having received a call that their mother, Kayla Jackson,[1] had been admitted to Baptist Hospital for seizures. At the hospital, Jackson expressed suicidal thoughts and admitted methamphetamine use.

---

[1] The circuit court also terminated Jackson's parental rights. However, she is not a party to this appeal.

SLIP OPINION

On July 8, 2015, DHS filed a petition for emergency custody. The affidavit attached to the petition stated that DHS had taken an emergency hold of the children based on Jackson's inability to care for them, Jackson's history of methamphetamine use, and the lack of another proper caregiver. The affidavit noted that the children had been living with Terrones. On July 8, 2015, the court entered an ex parte order for emergency custody.

On July 14, 2015, the court found probable cause for the emergency custody. The court listed Terrones as the putative father of M.T., J.T., and K.T. and ordered that paternity be established by DNA testing.

On August 27, 2015, the court adjudicated the children dependent-neglected. The court noted DHS's extensive history with Jackson dating back to 2006. The court found that the children had been subjected to aggravated circumstances in that it was unlikely that services to the family would result in successful reunification within a reasonable time. The court noted that Terrones was not believed to be the father of K.T. and further noted that he had been on probation for domestic violence against Jackson. The court ordered Terrones to submit to a psychological evaluation, a drug-and-alcohol assessment, and drug-and-alcohol screenings; attend parenting classes; and obtain and maintain stable and appropriate housing. The court noted that Terrones remained married to another woman, Angel Martin, even though he planned to continue his relationship with Jackson. The court advised him to get a divorce.

On November 3, 2015, the court held a permanency-planning hearing, and on December 3, 2015, the court entered a permanency-planning order. In the order, the court noted that DNA tests reflected that Terrones is the biological father of M.T. and J.T. but

not K.T. The court further noted that Terrones had tested negative on his drug screens. As to Jackson, the court noted that she was pregnant and that she had tested positive on a drug screen. The court found that DHS had made reasonable efforts to provide family services. The court continued the goal as reunification.

On April 5, 2016, the court appointed Terrones an attorney. On that same day, the court held a second permanency-planning hearing. And on May 12, 2016, the court entered a permanency-planning order.[2] In the order, the court found that DHS had made reasonable efforts to provide family services. The court noted that Jackson had a drug screen with no temperature reading in March 2016, which the court found indicated deceit. As to Terrones, the court noted that he had tested negative on his drugs screens and had made some efforts to comply with the court's orders. The court further noted that Terrones had submitted to psychological evaluation but the results were "not favorable." The court referenced the results of a home study, which stated,

> There is also some indication of possible instability within the relationship with [Jackson's] live-in boyfriend [Terrones] as evidenced by their report of no separations within their relationship yet there is at least one child fathered by someone other than the boyfriend [Terrones] within the reported time that they have been together. There is also possible domestic violence noted between them.
> . . . .
>
> It is questionable if [Jackson] understands the requirements of any legal placement with her mother of her youngest child . . . as [Jackson] stated [that] the child will return to her care when the other children are back here. It is also concerning that [Jackson] reports a lengthy history of her mother being an alcoholic who apparently still drinks alcohol although apparently not as significantly as she did during [Jackson's] childhood.

---

[2] The permanency-planning order does not list Terrones's counsel as being present at the hearing.

The court again found that the children had been subjected to aggravated circumstances in that it was unlikely that services to the family would result in successful reunification within a reasonable time. The court changed the goal of the case to termination.

DHS filed a petition for termination of Terrones's parental rights on May 16, 2016, and an amended petition on May 25, 2016. DHS alleged four grounds for termination against Terrones: (1) the failure-to-remedy-conditions-causing-removal ground pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Repl. 2015); (2) the failure-to-remedy-conditions-preventing-placement ground pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(b)*; (3) the aggravated-circumstances ground pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)*; and (4) the subsequent-factors ground pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*. On July 11, 2016, the court entered an order substituting Terrones's counsel because his previous counsel had a conflict of interest.

On July 12, 2016, the court held a termination hearing. Amanda Joshlin, a social worker, testified that on March 21, 2016, she visited the home that Terrones and Jackson shared. She stated that the home was cluttered but not inappropriate; however, she could not complete a full evaluation of the home because that required two visits, and Jackson had failed to schedule a second visit.

Following Joshlin's testimony, DHS introduced into evidence Terrones's psychological evaluation. The "impression" section of the evaluation stated the following:

> Based on the evaluation, Mr. Terrones is functioning within the lower end of the low average range of intellectual development in comparison to the normed sample. He presented with the intellectual capability to parent. However, a limiting factor is his limited use/comprehension of English.
> He minimized trust issues in his relationship with Ms. Jackson. He identified limited awareness and/or appreciation of factors associated with her drug use. His

SLIP OPINION

statement that she is no longer using drugs in tandem with some of the items in the testing is naive.

In my opinion, Mr. Terrones provided limited understanding of Ms. Jackson's issues and reasons for use other than his assumption that she uses for fun/recreationally. He had difficulty understanding what medications or prescriptions she is taking and evinced limited understanding of the potential for abuse of medications.

Based on logistical issues in the ultimate care of the children, the elevation on the child domain on the PSI and possible overuse of alcohol (alluded to on the PAl and elevated defensiveness score on the SASSI-3), Mr. Terrones would be unable to independently parent, in my opinion.

Ancillary involvement would be indicated, however. Additional information regarding his potential for alcohol abuse would be needed.

Mr. Terrones did not appear capable of independent parenting at this point. Developing a plan for the children to be sufficiently monitored and/or supervised would be necessary given [Ms. Jackson's] penchant for substance abuse. Slow reunification following implementation of the following recommendations would be indicated, as a result.

Felicia Carter, the Pulaski County DHS supervisor, then testified that she recommended terminating Terrones's parental rights. She testified that Terrones had failed to complete all services. She recognized that he had completed the psychological evaluation and attended individual counseling but noted that he had not completed a drug-and-alcohol assessment and that DHS had made three referrals. She also stated that she had no documentary evidence that he had completed parenting classes. She noted that he had tested negative on all his drug screens but had failed to show for a May drug screen. Carter stated that Terrones had visited the children twelve times since November but after May 18, he had stopped visiting. She testified that Jackson and Terrones had a child on April 15, 2016, S.T., and that S.T. had tested positive for benzodiazepines, amphetamines, and methamphetamine. She also pointed out that Terrones and Jackson are still married to other people and that Terrones is the father of M.T., who was born in 2012, and J.T., who was born in 2015; however, he is not the father of K.T., who was born in 2013.

Carter stated that her major concern with Terrones is his undocumented-citizenship status. The court then noted that it "would never terminate parental rights because somebody was undocumented, although sometimes being undocumented does add some other issues to be concerned about." Angela Brown, an adoption specialist, testified that the children are adoptable.

Terrones then testified that he works in construction and averages a forty-hour workweek. He noted that his income is about $2,000 per month. He testified that he had consistently visited his children, and any absences were a result of work. He stated that he had attended three parenting classes and had completed therapy sessions.

Terrones recognized that he and Jackson had another child following the removal of M.T. and J.T. and that the child had tested positive for drugs at birth. He knew Jackson was a drug user, but he had maintained a relationship with her. He explained that when DHS opened the case in July 2015, he was on probation for domestic abuse against Jackson. He blamed her for the dispute. He testified that he and Jackson had ended their relationship about twenty-two days prior to the hearing and that she was now living with another man. He noted that he remained in the house that he and Jackson had shared and that her name is on the lease; he did not know whether his name is also on the lease. He stated that if he received custody of his children, he would not allow Jackson to see them. He explained that his mother-in-law, Jackson's mother, could help him with the children and that if he had immigration problems, she could care for them. He further noted that he is still married to another woman but he had not spoken to her in five years. He asked the court for additional time to complete the case plan.

Following the hearing, on August 11, 2016, the court entered an order terminating Terrones's parental rights based on the failure-to-remedy-conditions-causing-removal, aggravated-circumstances, and subsequent-factors grounds. The court cited Terrones's psychological evaluation. The court also found that Terrones was not a credible witness and that it did not believe that he had ended his relationship with Jackson. The court further found that it is in the best interest of the children to terminate his parental rights. The court considered the testimony of Brown that the children are adoptable. The court also specifically considered the potential harm to the health and safety of the children caused by returning the children to Terrones's custody.

Following the entry of the termination order, Terrones filed a notice of appeal. On appeal, he argues that the circuit court erred in finding that (1) a statutory ground supported termination and (2) it was in the best interest of the children to terminate his parental rights.

An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). In determining whether termination is in the child's best interest, the circuit court must consider the likelihood that the child will be adopted if the termination petition is granted and the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) and (ii). Additionally, DHS must prove at least one statutory ground for termination by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3)(B). We do not reverse a termination order unless the circuit court's

SLIP OPINION

findings were clearly erroneous. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007).

Terrones argues that the court erred in finding that the failure-to-remedy-conditions-causing-removal, the aggravated-circumstances, and the subsequent-factors grounds supported termination. We first address Terrones's argument concerning the subsequent-factors ground.

The subsequent-factors ground requires

> [t]hat other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juveniles in the custody of the parent is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances which prevent the placement of the juvenile in the custody of the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*. Accordingly, the subsequent-factors ground for termination consists of multiple elements. *Bell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 113, 484 S.W.3d 704. First, this ground requires that subsequent issues arose after the original petition had been filed that demonstrate that it is contrary to the juvenile's health, safety, or welfare to place the juvenile with the parent. *Id.* Second, appropriate family services must have been offered. *Id.* Third, there must be evidence that the parent is indifferent or lacks the capacity to remedy the subsequent factors or rehabilitate the parent's circumstances that prevent placement of the juvenile with that parent. *Id.* Terrones challenges the second and third elements.

As to the second element, Terrones argues that DHS failed to offer appropriate family services in the form of English classes and assistance in gaining a legal immigration status.

Terrones concedes that he did not raise the issue to the trial court; however, he argues that DHS has an affirmative duty to prove appropriate services at the termination hearing as proof of the subsequent-factors ground.

This court has held that when a circuit court makes factual findings in an earlier order, DHS does not have an affirmative to duty to reprove factual findings at a termination hearing. *See Yarbrough v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 429, 501 S.W.3d 839; *Contreas* v. *Ark. Dep't of Human Servs*, 2015 Ark. App. 604, 474 S.W.3d 50. In this case, at the April 10, 2015 permanency-planning hearing, the circuit court found that DHS had made reasonable efforts to provide services. Thus, DHS did not have to reprove those findings at the termination hearing.

Terrones asserts that he did not have a meaningful opportunity to object to the court's appropriate-services finding because he did not have effective counsel until July 11, 2016, the day before the termination hearing. However, Terrones had counsel at the termination hearing. *See Yarbrough*, 2016 Ark. App. 429, 501 S.W.3d 839 (holding that a parent waived the issue of whether appropriate services were provided to him when he did not object at the termination hearing even though the finding was made at a previous permanency-planning hearing). Further, to any extent that Terrones is making an ineffective-assistance-of-counsel claim, we will not consider a claim for ineffective assistance of counsel unless the issue was first raised in the circuit court. *See Taffner v. Ark. Dep't of Human Servs.*, 2016 Ark. 231, 493 S.W.3d 319.

As to the third element, Terrones argues that DHS offered insufficient proof that he manifested an indifference or inability to remedy the conditions that prevented placement.

9

We disagree. The evidence showed that Terrones did not complete the case plan, that he maintained a relationship with Jackson throughout the majority of the proceedings, that they had separated only twenty-two days before the hearing, that they had a history of returning to their relationship, and that Jackson posed a serious risk to their children as result of her drug use. Terrones's psychological evaluation stated that he had a "naive" perception of Jackson's drug problem, and Jackson and Terrones had a third child born during the pendency of the proceedings who had been exposed to methamphetamine. *See Tadlock v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 841, 372 S.W.3d 403 (affirming a termination of a father's rights when he continued his relationship with the mother who had an unresolved drug problem so severe that she tested positive for drugs after giving birth to the child despite having received treatment). Accordingly, we hold that the evidence is sufficient to show that Terrones manifested an indifference or inability to remedy the conditions that prevented placement and that the circuit court did not clearly err in finding that the subsequent-factors ground supported termination. Because only one ground is required for termination, we need not address Terrones's arguments concerning the court's finding of the failure-to-remedy-conditions-causing-removal and the aggravated-circumstances grounds.

Terrones also argues that the court's best-interest finding must be reversed. He does not challenge the adoptability prong but asserts that the evidence is insufficient to demonstrate a potential harm of returning the children to Terrones's custody. He complains that the circuit court included only a blanket statement in the termination order that it had considered the potential harm without any elaboration.

We disagree. The potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. The potential-harm analysis is to be conducted in broad terms. *Id.* It is the "best interest" finding that must be supported by clear and convincing evidence. *Id.* Thus, the court was not required to identify a potential harm that would result by placing the children with Terrones. Moreover, the evidence supporting the subsequent-factors ground also supports the court's best-interest determination. Accordingly, we hold that the circuit court did not clearly err in finding that termination of Terrones's parental rights was in the best interest of M.T. and J.T.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.