KENNETH S. HIXSON, Judge
Appellant Niesha Moore appeals after the Hot Spring County Circuit Court filed an order terminating her parental rights to B.S. (DOB 12-18-2016).[1] Appellant's sole argument on appeal is that termination of her parental rights was not in B.S.'s best interest. We affirm.
I. Facts
On February 8, 2017, the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency-neglect of B.S. In the affidavit attached to the petition, DHS stated that it was reported that both appellant and B.S. tested positive for cocaine at B.S.'s birth. A plan of safe care was put in place, and a team attempted to work with appellant to keep B.S. safe in her home. However, appellant was subsequently arrested and placed in jail on January 3, 2017, on unrelated charges. DHS reported that appellant had left B.S. in the care of appellant's alleged sister and brother-in-law, Starkeisha and Jimmy Fricks. After appellant's release on February 1, 2017, she returned to the Fricks's home. The next day, DHS made a home visit, and appellant admitted using cocaine and drinking gin in the presence of B.S. She additionally tested positive for cocaine and methamphetamine. Thereafter, DHS placed a seventy-two-hour hold on B.S. due to the allegations of neglect, drug abuse, and parental unfitness. The trial court granted the petition, finding that probable cause existed for the removal. The trial court found that there was probable cause to believe that B.S. was dependent-neglected and that it was contrary to the welfare of B.S. to remain with appellant.
Subsequently, a probable-cause hearing was held on February 14, 2017, and the trial court filed a probable-cause order. At the hearing, appellant requested permission to enter drug treatment, and the trial court ordered DHS to expedite drug treatment. DHS filed a court report on March 31, 2017. In that report, DHS stated that B.S. had been placed in a provisional-foster-home placement with her maternal aunt. It also stated that appellant had been arrested in Saline County on a failure-to-appear charge and that appellant still had several pending charges in Malvern, Arkansas. Appellant further tested positive for cocaine on March 9, 2017, which was later confirmed by a lab test. Finally, the report noted that appellant had completed her drug-and-alcohol assessment, which *308 had recommended that she receive inpatient drug treatment.
At the May 9, 2017 adjudication hearing, appellant stipulated that B.S. was dependent-neglected, and as such, the trial court found B.S. dependent-neglected in its order. The goal was set as reunification. A review hearing was held on August 8, 2017. Appellant was not present as she was incarcerated at that time, but her attorney appeared on her behalf. Additionally, multiple relatives appeared, and the trial court ordered DHS to conduct a home study on three of B.S.'s relatives: Dorothea[2] Roberson, maternal great-grandmother; Patricia Moore, maternal grandmother;[3] and Angela McClendon, paternal grandmother. The trial court further found that appellant had not complied with the case plan or demonstrated progress. The trial court noted that at that time, appellant was incarcerated for convictions of battery and aggravated assault that occurred in May 2017.
The next review hearing took place on October 24, 2017. After that hearing, the trial court found that appellant had partially complied with the case plan in that she had completed parenting and anger-management classes while incarcerated in the Arkansas Department of Correction. Dorothea Roberson, Patricia Moore, and Angela McClendon were granted visitation on Fridays from 9:00 a.m. to 10:00 a.m. at the Hot Spring County DHS office. The trial court further found that DHS had denied the home studies on Dorothea Roberson and Patricia Moore and that B.S. should not be placed in either home. Angela McClendon failed to return the paperwork to be considered for placement.
After the February 27, 2018 permanency-planning hearing, the trial court changed the goal to adoption and authorized DHS to file a petition for termination of parental rights. DHS filed a petition for termination of parental rights on March 15, 2018. DHS alleged four grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2017) that were applicable to appellant, including the failure-to-remedy, subsequent-factors, criminal-sentence, and aggravated-circumstances grounds.
At the termination hearing, appellant testified that she was currently incarcerated for violent offenses unrelated to her history of drug abuse and that her sentence was for a total of five years. Although she testified that she thought she would be released sooner, she stated the earliest she could be released was a year from then. She admitted that she had completed inpatient treatment during the pendency of the case but had immediately relapsed and used cocaine. Additionally, appellant admitted that she had not found gainful employment before her most recent incarceration. She instead stated that she had received Social Security benefits and has bipolar disorder. However, appellant explained that she planned to "get [her] life together and be there for B.S." after her release. She stated that in the meantime, she desired to sign a guardianship to her grandmother, Dorothea Roberson, rather than having B.S. continue to live in foster care with her best friend and B.S.'s godmother, Starkeisha Fricks. Finally, appellant testified that she had lied to DHS about Ms. Fricks being her sister and further testified that Ms. Fricks is not related to her at all.
*309 Evidence was introduced to show that on March 20, 2017, appellant had pleaded guilty to second-degree battery and was sentenced to sixty months' probation. However, her probation was subsequently revoked, and on July 17, 2017, she was sentenced to serve forty-eight months' incarceration. In a separate case, appellant pleaded guilty to aggravated assault and second-degree battery and was sentenced on June 13, 2017, to serve sixty months' incarceration. In yet another case, appellant pleaded guilty to second-degree battery and possession of drug paraphernalia to ingest, inhale, etc., and was sentenced on October 30, 2017, to serve sixty months' incarceration.
Kaylen Diemer, the family-service worker assigned to the case, testified regarding the case history outlined above. Diemer detailed appellant's failure to comply with the recommendations after completing inpatient drug treatment, including maintaining sobriety for a period of a year, participating in NA meetings twice weekly, and finding gainful part-time employment. Further, Diemer testified that she recommended that appellant's parental rights be terminated due to her violent past, history of drug relapse, and incarceration. Diemer opined that the trial court should not continue to delay B.S.'s permanency and testified that B.S. was doing very well in her placement with Ms. Fricks. B.S. had spent most of her life in Ms. Fricks's home. Diemer stated that even if DHS had known that appellant and Ms. Fricks were not related, there was a possibility that Ms. Fricks still would have been approved as placement based on the prior care that Ms. Fricks had provided to B.S.
Regarding home studies, Diemer testified that DHS had denied the home studies completed on the homes of Dorothea Roberson and Patricia Moore. Patricia Moore's home was under construction, and Patricia Moore was living with Dorothea Roberson at that time. Moreover, during the home study conducted at Dorothea Roberson's home, Patricia Moore tested positive for illegal substances, and there were concerns about the amount of people living in the home and the space left for B.S. Diemer testified that B.S. was adoptable and that DHS would ask Ms. Fricks if she was willing to adopt B.S. after appellant's rights were terminated. Finally, Diemer stated that although the biological relatives had been offered visitation since October 24, 2017, they failed to exercise that visitation on at least fourteen occasions.
Ms. Fricks testified that she basically had taken care of B.S. since birth. She indicated that it was her desire to file a petition to adopt B.S. once parental rights were terminated because B.S. deserved permanency. Although she admitted that she is not appellant's sister and that there is not any proof that she is related to appellant, Ms. Fricks claimed that she "could possibly be a cousin."
Sandra Marfoglio-Hinton, an adoption specialist, testified that a data match identified 452 possible adoption matches for B.S. She opined that children like B.S. are highly adoptable and stated that she was aware that Ms. Fricks wanted to adopt B.S.
In the termination order, the trial court found by clear and convincing evidence that it was in B.S.'s best interest to terminate appellant's parental rights. It stated that it considered the likelihood that B.S. would be adopted and the potential harm to the health and safety of B.S. by returning the child to appellant. As to adoptability, the trial court found that B.S. was adoptable based on the "adoption data match and the foster parents, who have cared for the juvenile her entire life, desire to adopt the juvenile." As to potential *310 harm, the trial court found that B.S. would be subjected to potential harm because of appellant's incarceration, but even if she was not incarcerated, her lifestyle, criminal history, and history of drug and alcohol abuse would subject B.S. to potential harm. Finally, the trial court found that all four alleged statutory grounds existed. This appeal followed.
II. Standard of Review
A trial court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Posey v. Ark. Dep't of Health & Human Servs. , 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. Id.
In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. Reid v. Ark. Dep't of Human Servs. , 2011 Ark. 187, 380 S.W.3d 918.
The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. Cobb v. Ark. Dep't of Human Servs. , 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. Id. Finally, a parent's past behavior is often a good indicator of future behavior. Id.
III. Best Interest
Appellant's sole argument on appeal is that the trial court erred in terminating her parental rights because there was insufficient evidence that termination was in B.S.'s best interest. Appellant specifically argues that the trial court should have considered the preservation of B.S.'s relationship with her relatives and that this relationship weighed against termination. She explains that B.S. was placed with a relative, Ms. Fricks. Although appellant admits that the testimony at the termination hearing was that Ms. Fricks is unrelated or at best a cousin, she argues *311 that the trial court found Ms. Fricks to be a relative in its permanency-planning order, which she has not appealed. Moreover, appellant argues that B.S. had enjoyed a relationship with other biological relatives and that the trial court failed to consider that impact in its termination decision. Appellant does not otherwise challenge the sufficiency of the evidence supporting the grounds for termination, nor does she challenge the trial court's findings regarding adoptability. Thus, we need not consider those issues. Yarbrough v. Ark. Dep't of Human Servs. , 2016 Ark. App. 429, 501 S.W.3d 839.
Appellant analogizes this case to three cases: Lively v. Arkansas Department of Human Services , 2015 Ark. App. 131, 456 S.W.3d 383 ; Cranford v. Arkansas Department of Human Services , 2011 Ark. App. 211, 378 S.W.3d 851 ; Caldwell v. Arkansas Department of Human Services , 2010 Ark. App. 102, 2010 WL 374432. However, the facts of those cases are inapposite, and appellant's reliance on them is misplaced.
Here, the record reveals that B.S. was in a foster-care placement with Ms. Fricks, who may or may not be related to her. Regardless of her alleged relative status, Ms. Fricks was a stable influence and had been B.S.'s foster parent for most of her young life. However, severing appellant's parental rights does not change that status. In fact, once appellant's rights are terminated, Ms. Fricks indicated that she desired to adopt B.S., and DHS indicated that it would pursue having Ms. Fricks adopt B.S. so that permanency could finally be achieved, which is the intent of the termination-of-parental-rights statute. See Ark. Code Ann. § 9-27-341(a)(3).
Appellant alleges that she "never presented a potential harm to B.S." In assessing the potential-harm factor, the court is not required to find that actual harm would ensue if the child were returned to the parent or to affirmatively identify a potential harm. Sharks v. Ark. Dep't of Human Servs. , 2016 Ark. App. 435, 502 S.W.3d 569. The potential-harm analysis is to be conducted in broad terms. Id. Past actions of a parent over a meaningful period of time are good indicators of what the future may hold. Id. Here, both appellant and B.S. tested positive for cocaine at B.S.'s birth. Additionally, despite receiving inpatient treatment, appellant relapsed and continued to use cocaine when she was not incarcerated. Moreover, appellant is and has been incarcerated for a substantial period of this newborn child's life and is unable to care for B.S. at this time. Clearly, stability and reasonable hope for reunification is lacking in this case. Although B.S. may have enjoyed a relationship with some of her relatives, but, as we have held, drug-related issues can support a court's finding of potential harm, even when a child is placed with a relative. Swangel v. Ark. Dep't of Human Servs. , 2018 Ark. App. 197, 547 S.W.3d 111 (citing White v. Ark. Dep't of Human Servs. , 2017 Ark. App. 529, at 6, 530 S.W.3d 402, 405 ). Because the trial court's best-interest determination is not clearly erroneous, we must affirm.
Affirmed.
Harrison and Murphy, JJ., agree.

The trial court also terminated the parental rights of Aaron Singleton, B.S.'s father. However, he is not a party to this appeal.

The spelling of Ms. Roberson's first name is inconsistent throughout our record on appeal.

Patricia Moore had previously filed petitions to intervene and for relative placement; however, the trial court did not rule on those petitions.