Cite as 2022 Ark. App. 21

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-21-88

| | |
|---|---|
| AMANDA WALKER AND RANDALLE SANDERS | **Opinion Delivered** January 19, 2022 |
| APPELLANTS | APPEAL FROM THE CROSS COUNTY CIRCUIT COURT |
| V. | [NO. 19JV-18-59] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE ANN HUDSON, JUDGE |
| APPELLEES | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Amanda Walker and Randalle Sanders appeal from the order of the Cross County Circuit Court terminating their parental rights to their four children: RS, ES, JS, and NS. Walker and Sanders have filed separate briefs on appeal alleging that the Arkansas Department of Human Services (DHS) offered insufficient proof to terminate their parental rights. We affirm the circuit court's order.

A protective-services case was opened on the family in May 2018 when NS tested positive for illegal substances at birth. Services offered to the family included drug-assessment referrals, but Sanders missed both of his appointments. Walker completed her assessment but failed to follow through with the recommendation for substance-abuse counseling. During a home visit in August 2018, two-year-old JS was the only person to initially come to the door. Eventually, an unknown man opened the door and said that the

parents were on vacation in Florida, and he was babysitting. However, Sanders then appeared. Sanders was drug screened and was positive for amphetamines, methamphetamine, and THC. He admitted using drugs the day before and claimed that he had not seen Walker in a week. JS, six-year-old RS, and five-year-old ES all had head lice, and JS had a rash with blisters. A pipe was found on the kitchen table. Due to Sanders's continued drug use, the drug paraphernalia found in the home, and the lack of an appropriate caregiver, DHS took the children into custody.

The children were subsequently adjudicated dependent-neglected due to both parents abusing illegal substances and leaving the children with an inappropriate caregiver. The goal of the case was set as reunification with a concurrent goal of relative placement. Sanders was found to be an Indian parent under the Indian Child Welfare Act (ICWA). The parents were ordered to complete parenting classes, follow the recommendations of a drug-and-alcohol assessment, remain drug-free, and obtain stable housing. After several review hearings, a permanency-planning hearing was held in August 2019 wherein the goal was changed to adoption. The evidence at the permanency-planning hearing established that the parents had not maintained stable housing, that they had not submitted to court-ordered hair-follicle tests, and that Walker had given birth to another child that tested positive for drugs at birth and was in the custody of the state of Mississippi.[1] Overall, the parents had failed to show stability or compliance with the case plan.

The termination hearing was held over the course of three dates in July, September, and October 2020. Tashiria Montgomery of the Mississippi Department of Child

_____

[1]Walker reported that Sanders is not the father of this child.

Protection Services testified that Walker had given birth in July 2019 to a child who tested positive for amphetamines. The child was now in the Mississippi foster-care system. Montgomery said that Walker had not been compliant with her family–service plan, which provided that she should maintain stable housing, maintain contact with the agency and the child through visitation, maintain employment, submit to drug screens, and participate in therapy. Prior to a July 2020 visit, Walker had last visited the child in February 2020. Walker had also failed to sign a release to have the results of her drug screens in Arkansas sent to Mississippi.

Carla Washington, the family's Cross County caseworker, and Kim Bliss, the county supervisor, testified that Walker and Sanders had been only partially compliant with the case plan and court orders. They had lived at four different addresses during the case and had failed to maintain stable employment. At the time of the hearing, they were living in the home of Walker's mother, which was the same place they were living when the children were removed. The home was clean, but the parents had not allowed Washington and Bliss into the children's rooms and told them they were not yet set up for the children.

Walker had six positive drug tests throughout the case and five additional tests that registered an invalid temperature. She completed inpatient treatment on December 31, 2019, but had two positive tests following treatment. Walker challenged a screen in July 2020 that was positive for methamphetamine, but it was confirmed by the lab. On the final day of the termination hearing, DHS introduced into evidence another lab result from a September 19, 2020 screen that was positive for methamphetamine. Sanders tested positive twelve times throughout the case and had two screens with invalid temperatures. He

3

completed inpatient treatment in December 2018 and again in February 2020. As with Walker, he tested positive for methamphetamine in July 2020, and the result was confirmed by the lab. On the same date as this screen, both parents obtained a private drug screen that was negative, but DHS was informed that the parents were not observed giving their urine samples. A subsequent positive test from Sanders on August 11, 2020, was admitted into evidence. Neither parent completed outpatient treatment, and Sanders had failed to submit to a second court-ordered hair-follicle test.

Walker and Sanders had completed parenting classes, but neither were consistent with visitation. In October 2019, ES reported that Sanders had cornered him in the bathroom and threatened to take him away from the foster parents. ES was very upset by this, and ES and RS became afraid to visit with Sanders. DHS stopped visits between Sanders and ES and RS due to the children's fear and later stopped their visits with Walker. The visits with the younger children continued. Of the twenty-three visitations scheduled in 2020, Walker had missed nine, and Sanders had missed seven. Bliss testified that the parents had not been honest and forthright with DHS in the last year, and they were still dealing with the same issues as in the beginning of the case.

Chelsea Brawner testified that she had been the counselor for ES and RS since January 2020. She was treating RS for trauma and ES for anxiety. She had conducted four family sessions with Walker, Sanders, RS, and ES. Brawner had recommended that the sessions be stopped due to the children's worsening symptoms. RS had night terrors, frequent unexplained crying, anxiety, and flashbacks. ES had an increase of anxiety and defiance. The CASA court report admitted into evidence states that all parties involved

4

agreed at a staffing that having family counseling sessions with RS and ES in lieu of traditional visitations was the best option. Due to differing perspectives on how the sessions were going after the second visit, all parties agreed to have the sessions video recorded. CASA volunteer supervisor Kim Hunt Thornhill reported that the children exhibited fearful reactions to the parents as previously described by their therapist, and they repeatedly stated that they do not wish to return to their parents.

Both Walker and Sanders testified that they were currently drawing unemployment. During the two years the case had been open, Walker had worked at a restaurant for four months, at a hotel for a week, and at a gas station for about five days. She said that the hotel fired her upon realizing she was pregnant. Walker claimed that she quit her job at the gas station over an incident in which she was arrested for lottery fraud and theft. She denied stealing any money but said that she pled no contest to the charges in order to put it behind her. She was placed on two years of unsupervised probation and was fined. Sanders had been employed for longer stretches, but he was last employed in December 2019. Walker said that together the couple's income was about $1500 a month and was sufficient to support the children. Both claimed that they had not used drugs since completing inpatient treatment in early 2020.

Renee Gann of the Cherokee Nation testified that it was the opinion of the Cherokee Nation that continued custody of the children with the parents is most likely to result in serious physical or emotional damage to the children due to the concerns of substance abuse and the failure to maintain stable housing and employment. Furthermore,

it was the opinion of the Cherokee Nation that DHS had made active efforts to reunite the family.

The circuit court found beyond a reasonable doubt that the children had been adjudicated dependent-neglected, had continued out of the home for more than twelve months, and despite meaningful and active efforts by DHS to rehabilitate the home and correct the conditions that caused removal, those conditions were not remedied by the parents. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i) (Supp. 2021). The court also found that it was in the children's best interest for parental rights to be terminated.

We review termination-of-parental-rights cases de novo but do not reverse unless the circuit court's findings are clearly erroneous. *Swangel v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 197, 547 S.W.3d 111. An order terminating parental rights subject to the ICWA must be based on a finding beyond a reasonable doubt that one of the grounds stated in the termination statute is satisfied and that termination is in the children's best interest. Ark. Code Ann. § 9-27-325(h)(B)(ii) (Supp. 2021). According to the ICWA, the party seeking to terminate parental rights shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful. 25 U.S.C. § 1912(d). Furthermore, no termination of parental rights may be ordered in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f).

On appeal, Walker argues that there was insufficient evidence to support a statutory ground for termination because DHS failed to make a "meaningful effort" to rehabilitate her as required for termination pursuant to the failure-to-remedy ground.[2] She specifically claims that DHS failed to make a meaningful effort or provide appropriate services in the almost one-year period that elapsed between the permanency-planning hearing and the start of the termination hearing. She argues that this case is similar to *Duncan v. Arkansas Department of Human Services*, 2014 Ark. App. 489, where a delay in providing a critical service affected the amount of progress that could be achieved prior to the termination hearing. We disagree. In *Duncan*, the mother was the victim of abuse, but individual counseling was not begun until two months before the termination hearing. Her therapist testified that progress had already been made, but more work was needed. We held that when considering the delay in counseling and Duncan's substantial compliance with the case plan, including her separation from her abuser, there was insufficient proof of the failure-to-remedy ground.

Here, the only specific services Walker addresses are visitation and family counseling. She fails to address the relevance of these services to her failure to remedy the drug issues in the case. In the time between the permanency-planning hearing and the termination

---

[2]This ground provides for termination when "a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent." Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*. Walker also addresses the subsequent-factors ground, which was pled in the termination petition, and argues that DHS failed to offer "appropriate family services" as required for termination under that ground. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*.

hearing,[3] meaningful efforts were made to remedy Walker's drug issues. She continued to be drug tested and tested positive in November 2019. She subsequently entered and completed residential treatment, but she twice tested positive after treatment, including after the termination hearing had begun. She failed to complete outpatient treatment. Walker does not point to any other "meaningful effort" DHS should have made to address her drug issues.

Walker also briefly addresses two potential conflicts of interest that the attorney ad litem had and states that his participation in the case was contrary to the appearance of fairness. However, while Sanders's counsel stated an intent to move to have the attorney ad litem dismissed over an alleged conflict, Walker's attorney did not make such an argument. Accordingly, any argument that the case should be reversed due to the attorney ad litem's participation is not preserved. We hold that the circuit court's determination that Walker's parental rights should be terminated is not clearly erroneous.

Sanders argues that the services offered by DHS were average services offered in any case and did not meet the standard of "active efforts" required by the ICWA. He argues that DHS stopped visitation between him and the oldest two children in October 2019 without a court order but did not start therapy until eight months later. Sanders claims that

---

[3]In the termination order, the circuit court stated that the permanency-planning hearing was continued because Walker fired her appointed counsel and intended to hire private counsel. On the date the hearing was held, Walker had not retained counsel and wanted to proceed without representation. At some point following the permanency-planning hearing, Walker requested that the court again appoint counsel for her and continue the termination hearing. The court ordered that counsel be appointed. In a July 21, 2020 transcript, the court noted that the termination hearing had been rescheduled a number of times, and there is a reference to Walker having four different attorneys in a span of six months.

DHS created the difficulties between the parents and the children and used the situation it created as evidence to terminate their parental rights.

As with Walker, however, the circuit court was presented with evidence beyond a reasonable doubt that Sanders had failed to remedy the issue of his drug abuse. He admitted that he tested positive on the day of his testimony, September 11, 2020, and additional positive tests from July 21 and August 11, 2020, were admitted into evidence. Thus, two years into the case, Sanders was still testing positive for methamphetamine despite twice completing residential treatment. Sanders offers no argument regarding any additional services that could have been offered to address his drug use. Although he alleges that DHS damaged his relationship with his children by stopping visitation, he fails to assert how the issue of visitation is related to his failure to remedy his drug abuse.

Gann testified that the Cherokee Nation had been involved in staffings throughout the case, had made suggestions to DHS, and that DHS had made the required active efforts. In *Holmes v. Arkansas Department of Human Services*, 2016 Ark. App. 495, 505 S.W.3d 730, the ICWA expert testified that multiple referrals for drug treatment amounted to "active efforts." We held that the circuit court did not clearly err in determining that DHS proved beyond a reasonable doubt that active efforts were made. Here, Sanders was drug tested approximately forty-five times during the case and was referred for drug assessments, outpatient treatment, and inpatient treatment, which he completed twice. The circuit court found that active efforts had been made throughout the case, and we cannot say that this determination was clearly erroneous. Accordingly, we affirm the termination of Sanders's parental rights.

Affirmed.

HARRISON, C.J., and HIXSON, J., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for separate appellant Amanda Walker appellant.

*Eden Law Firm*, by: *Kimberly Eden*, for separate appellant Randalle Sanders.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.